[Cite as *Huegemann v. VanBakel*, 2014-Ohio-1888.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| THEODOR HUEGEMANN, et al., | : | |
| Plaintiffs-Appellees, | : | CASE NO. CA2013-08-022 |
| | : | O P I N I O N |
| - vs - | | 5/5/2014 |
| | : | |
| WILHELMUS HENDRICUS MARIA (Willy) VanBAKEL, et al., | : | |
| | : | |
| Defendants-Appellants. | : | |
| | : | |

CIVIL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. 10CVG00586

Pennington Law LLC, David S. Pennington, 3760 Leap Road, Hilliard, Ohio 43026, for plaintiffs-appellees, Theodor & Christiane Huegemann

Robinson, Curphey & O'Connell, Mark A. Ozimek, Ninth Floor, Four Seagate, Toledo, Ohio 43604, for defendant, Wilhelmus Hendricus Maria VanBakel

Charles R. Bappert, 100 West Chicago Street, Coldwater, MI 49036-1897, for defendants-appellants, Henricus Johannes Maria (Rene) VanBakel, Piet, Berkhout, Vrebamel BV, and TRT Investments

**RINGLAND, P.J.**

{¶ 1} Defendants-appellants, Henricus Johannes Maria (Rene) Van Bakel, Piet

Berkhout, Vrebamel BV and TRT Investments, appeal from the judgment entry of the Fayette

County Common Pleas Court overruling their motion to dismiss for lack of personal jurisdiction the amended complaint brought against them by plaintiffs-appellees, Theodor Huegemann and Christiane Huegemann. For the reasons that follow, we affirm the trial court's decision.

{¶ 2} The following factual allegations are taken from the Huegemanns' first amended complaint:

{¶ 3} The Huegemanns are a married couple who owned and operated a dairy farm in their native Germany for approximately 30 years. In 2007, the Huegemanns viewed a website for Vreba-Hoff Dairy Development, L.L.C. (VHDD), a subsidiary of Van Bakel Onroerend Goed, BV (VBOG). Afterwards, the Huegemanns met with one of VHDD's agents who told them they could start a new life in the United States by purchasing a dairy farm in Ohio and that they could finance the purchase by selling their dairy farm in Germany. Between March 2008 and August 2009, the Huegemanns entered into five contracts with VHDD and VBOG and those companies' representatives: Wilhelmus Hendricus Maria (Willy) Van Bakel and his brother, Rene Van Bakel, who is one of the appellants in this appeal.

{¶ 4} On March 22, 2008, the Huegemanns entered into a Dairy Construction Agreement with VHDD, which was represented by Willy Van Bakel. VHDD agreed to build for the Huegemanns a dairy farming operation in Mount Sterling, Ohio for $12,572,500. The purchase price was to be paid in several installments, with the balance due upon the sale of the Huegemanns' dairy farm in Germany.

{¶ 5} On August 8, 2008, the Huegemanns entered into a contract with VBOG for the sale of their dairy farm in Germany for approximately $2.1 million. Rene Van Bakel acted as VBOG's attorney-in-fact during this transaction. From this money, VBOG retained approximately $500,000; VHDD received approximately $1 million as a deposit on the Ohio dairy farm that was to be constructed for the Huegemanns; the Huegemanns retained

approximately $500,000 to travel to the United States and set up a new life there.

{¶ 6}   On April 20, 2009, Theodor Huegemann entered into a contract with Willy Van Bakel, in which Willy Van Bakel agreed to pay six percent interest on the Huegemanns' capital "until the moment that the capital is used in their [the Huegemanns'] project" and to "furnish the [Huegemann] family on their request a summary of their capital position and pay the outstanding interest." However, the Huegemanns' subsequent demands for payment of interest were ignored.

{¶ 7}   On August 7, 2009, the Huegemanns entered into the parties' fourth and fifth contracts with VHDD and VBOG, which were represented by Willy Van Bakel and Rene Van Bakel. In these two contracts, the parties affirmed or reaffirmed their prior agreements, including the one regarding the Huegemanns' Ohio dairy farm. The primary purpose of the parties' fourth contract was to deal with the portion of the German farm proceeds that was being held by Vrebamel, under its former name, WaldMilch. Under the terms of the fourth contract, WaldMilch (now Vrebamel), through its agent and owner, Rene Van Bakel, agreed to return *immediately* $555,730 of the Huegemanns' money, with interest, if the Ohio dairy farm for which the Huegemanns had contracted was not operational by the end of 2011. Under the terms of the parties' fifth contract, which was executed on the same day as the parties' fourth contract, appellants agreed that if the Ohio dairy farm was not operational by the end of 2011, then the Huegemanns could require the payment of their entire capital investment of $1,007,900, plus interest.

{¶ 8}   Additionally, the parties' fourth and fifth contracts both contained a preliminary note stating that the Huegemanns intended to emigrate to the United States to establish a new existence, and therefore had given up their existence in Germany by selling their farm in Germany to VBOG. The signature page of the parties' fifth contract contains the name of three cities: "Vredepeel" (the Netherlands), "Wauseon" (Ohio) and "Selm" (Germany).

{¶ 9} Less than two weeks after the parties' fourth and fifth contracts were executed, Willy Van Bakel and Rene Van Bakel, by and through a subsidiary, Midwest AG Investments, L.L.C., mortgaged the Ohio dairy farm property for $2 million and used the proceeds to satisfy a debt owed by Vreba Hoff Genetics, L.L.C. and/or West Kansas Dairy. The Huegemanns contend that the purpose of this mortgage was to fraudulently convey all equity in the Ohio farm to a third party without their knowledge or consent and that by granting the mortgage, the Van Bakel brothers liquidated all equity in the farm that had been promised to them.

{¶ 10} On June 29, 2010, Midwest AG Investments, the title owner of the Ohio dairy farm, filed for Chapter 11 bankruptcy protection. Among the listed assets on Midwest AG Investments' bankruptcy petition was the Ohio dairy farm that was the subject of the parties' August 7, 2009 agreements.

{¶ 11} On December 27, 2011, the Huegemanns filed an amended complaint against 45 defendants, including Willy Van Bakel, Rene Van Bakel, VBOG, VHDD, Piet Berkhout (an employee of VBOG), and TRT Development S.A., which later became known as TRT Investments. The Huegemanns raised numerous claims against the defendants, with their major claim being that the defendants violated provisions of Ohio's Corrupt Activity Act (OCCA) in R.C. 2923.31 et seq. Eighteen of the 45 named defendants in the action are nonresidents of Ohio; the 18 nonresident defendants include appellants.

{¶ 12} In 2012, Rene Van Bakel, Berkhout, VBOG and Vrebamel moved to dismiss the Huegemanns' amended complaint against them on the ground that the trial court lacked personal jurisdiction over them and the other alien defendants named in the action. In 2013, the trial court overruled the motion to dismiss, finding that the movants had engaged in conduct sufficient to bring them within the court's jurisdiction and that there was "no just reason for delay."

{¶ 13} Rene Van Bakel, Berkhout, Vrebamel and TRT Investments now appeal from the trial court's decision overruling their motion to dismiss for lack of personal jurisdiction the Huegemanns' action against them, and assign the following as error:[1]

{¶ 14} THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

{¶ 15} Before addressing the substantive merits of appellants' assignment of error, we must determine whether the order being appealed is a final, appealable order.

{¶ 16} Ohio's courts of appeals have jurisdiction "to review and affirm, modify, or reverse final orders." Article IV, Section 3(B)(2), Ohio Constitution. R.C. 2505.02 sets forth several types of final, appealable orders. *Wilhelm-Kissinger v. Kissinger*, 129 Ohio St.3d 90, 2011-Ohio-2317, ¶ 5. If an appeal is taken from an order that is not final and appealable, an appellate court has no jurisdiction to review the matter and must dismiss the appeal, even sua sponte if necessary. *Barber v. Ryan*, 12th Dist. Butler No. CA2010-01-006, 2010-Ohio-3471, ¶ 6. The term "final order" is primarily defined in R.C. 2505.02(B), which provides that "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of [the orders set forth in R.C. 2505.02(B)(1)-(7)]."

{¶ 17} Generally, an order denying a motion to dismiss is not a final order under R.C. 2505.02(B)(1), because it is not "[a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment." *In re R.A.W.*, 10th Dist. Franklin No. 11AP-1072, 2012-Ohio-4832, ¶12. This general rule has been applied to orders overruling a motion to dismiss for lack of personal jurisdiction. *See, e.g.*, *Matus v. Southern Farm Bureau Life Ins. Co.*, 5th Dist. Ashland No. CA1088, 1994 WL 728618 (Dec. 22, 1994), *Burns v.*

---

1. TRT Investments was not one of the party defendants who brought the motion to dismiss for lack of personal jurisdiction in the trial court, but the parties who brought the motion asserted that they were bringing it on behalf of all the alien defendants named in the action, which would include TRT Investments.

*Burns*, 10th Dist. Franklin No. 86AP-1110, 1987 WL 13935 (July 7, 1987). However, in this case we conclude that the trial court's order overruling appellants' motion to dismiss for lack of personal jurisdiction constitutes a final order under the "provisional remedy" category in R.C. 2505.02(B)(4).

{¶ 18} R.C. 2505.02(B)(4) states:

> (B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
>
> * * *
>
> (4) An order that grants or denies a provisional remedy and to which both of the following apply:
>
> (a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.
>
> (b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

{¶ 19} In the recent case of *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, ¶ 42, the Ohio Supreme Court stated:

> [I]n order to qualify as a final, appealable order under R.C. 2505.02(B)(4), three requirements must be satisfied: (1) the order must grant or deny a provisional remedy as that term is defined in the statute, (2) the order must in effect determine the action with respect to the provisional remedy, and (3) the appealing party would not be afforded a meaningful review of the decision if that party had to wait for final judgment as to all proceedings in the action. *Upshaw,* 110 Ohio St.3d 189, 2006-Ohio-4253, 852 N.E.2d 711, ¶ 15, citing [*State v.*] *Muncie,* 91 Ohio St.3d [440] at 446, * * * [2001-Ohio-93 (2001)].

{¶ 20} R.C. 2505.02(A)(3) defines the term "provisional remedy" as meaning "a proceeding ancillary to an action[.]" "[F]or purposes of R.C. 2505.02(A)(3)'s definition, '[a]n ancillary proceeding is one that is attendant upon or aids another proceeding.'" *State v.*

*Muncie*, 91 Ohio St.3d 440, 449 (2001), quoting *Bishop v. Dresser Industries,* 134 Ohio App.3d 321, 324, 730 N.E.2d 1079 (1999). "An ancillary proceeding is an 'ancillary suit,' *Black's Law Dictionary* 101 (9th Ed.2009), i.e., '[a]n action, either at law or in equity, that grows out of and is auxiliary to another suit and is filed to aid the primary suit, to enforce a prior judgment, or to impeach a prior decree.' *Id.* at 1572." *Muncie.*

{¶ 21} We conclude that a motion to dismiss for lack of personal jurisdiction is an "ancillary proceeding." See *Anderson* at ¶ 48 ("We have little trouble concluding that a motion to dismiss on double-jeopardy grounds is an ancillary proceeding.") Appellants' motion to dismiss for lack of personal jurisdiction "grows out" of the Huegemanns' action against appellants and the other parties they named as defendants in this action, and their motion to dismiss "is certainly 'attendant' upon the underlying [action] because it is 'consequent; concomitant; associated; [and] related' to the [action]." *Id.* Consequently, appellant's motion to dismiss for lack of personal jurisdiction qualifies as a "provisional remedy" under the first prong of the test set forth in R.C. 2505.02(B)(4) and *Anderson.*

{¶ 22} The second prong of the provisional remedy analysis is also satisfied in this case since the trial court's order denying appellants' motion to dismiss for lack of personal jurisdiction, in effect, determines the action with respect to the provisional remedy, because it permits the Huegemanns to proceed with their action against appellants. *Anderson* at ¶ 42, 52.

{¶ 23} We also conclude that the third and final prong of the provisional remedy analysis is met here, because forcing appellants to wait to appeal until final judgment is entered as to all proceedings in the action will deny them "a meaningful or effective remedy" by way of an appeal following final judgment. "Whether a remedy is meaningful or effective essentially is determined by the impracticability and detrimental effect of a delayed review" of the provisional order. *Penko v. City of Eastlake*, 11th Dist. Lake No. 98-L-186, 1998 WL

1145267, (Dec. 11, 1998), *3.

**{¶ 24}** Courts have found that litigation costs and delay in recovering money are generally insufficient to show the absence of a meaningful and effective remedy for purposes of R.C. 2505.02(B)(4)(b), because "[a] delay in obtaining monetary relief is the necessary consequence of most civil litigation and that delay does not render the ultimate remedy ineffective or meaningless." *Katherine's Collection, Inc. v. Kleski*, 9th Dist. Summit No. 26477, 2013-Ohio-1530, ¶ 13. However, given the circumstances of this case in which foreign defendants from not just different states but different countries are involved, we conclude that the litigation costs and delay in recovering money from the Huegemanns that appellants undoubtedly will experience should they ultimately prevail in the litigation *are* sufficient to establish the absence of a meaningful and effective remedy for purposes of R.C. 2505.02(B)(4)(b).[2]

**{¶ 25}** We now turn to the substantive merits of appellants' assignment of error.

**{¶ 26}** Appellants argue the trial court erred by denying their motion to dismiss the Huegemanns' action against them for lack of personal jurisdiction because (1) the Huegemanns' "amended complaint and their discovery requests directed to appellants do not allege facts necessary to bring the alien defendants within the personal jurisdiction of the [trial] court as required by Ohio's long arm statute, Ohio Revised Code Section 2307.382, and by Civ.R. 4.3(A), and by Civ.R. 9(B)," and (2) "[n]either [the Huegemanns' amended] complaint nor [their] propounded discovery allege facts which comport with [the trial] court acquiring personal jurisdiction under constitutional due process analysis."

**{¶ 27}** In determining whether it has personal jurisdiction over an out-of-state

---

2. Additionally, because the order being appealed is a final order under R.C. 2505.02(B)(4), the trial court's inclusion of Civ.R. 54(B) language in its order finding that there is "no just reason for delay," was unnecessary. *N. Fairfield Baptist Church v. G129, L.L.C.*, 12th Dist. No. CA2009-11-281, 2010-Ohio 2543, ¶ 22.

defendant, a court must engage in a two-step inquiry: first, the court must determine whether the defendant's conduct falls within Ohio's "long-arm" statute or the applicable civil rule, and if it does, then the court must determine whether the assertion of jurisdiction over the nonresident defendant would deprive the defendant of due process under the Fourteenth Amendment to the United States Constitution. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 235 (1994).

{¶ 28} Ohio's long-arm statute in R.C. 2307.382 states in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

* * *

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity.

(8) Having an interest in, using, or possessing real property in this state[.]

{¶ 29} R.C. 2307.381 provides that for purposes of R.C. 2307.382, "person" includes "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who is a nonresident of this state."

{¶ 30} Civ.R. 4.3 governs when service of process may be made outside this state.

The language in Civ.R. 4.3(A)(1)-(4) is similar to the language in R.C. 2307.382(A)(1)-(4), and the language in Civ.R. 4.3(A)(10) is similar to the language in R.C. 2307.382(A)(7).

{¶ 31} The plaintiff has the burden of proving personal jurisdiction once it has been challenged. *Goldstein*, 70 Ohio St.3d at 235. When, as here, the trial court does not hold an evidentiary hearing on a Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff need make only a prima facie showing of personal jurisdiction to withstand a motion to dismiss for lack of personal jurisdiction. *Id.* at 236. In determining whether the plaintiff has established the requisite prima facie showing, the trial court must view allegations in the pleadings and the documentary evidence in the record in the light most favorable to the plaintiff, resolving all reasonable competing inferences in the plaintiff's favor. *Id.*

{¶ 32} Since personal jurisdiction is a question of law, the court of appeals' standard of review is *de novo*. *State ex rel. Atty. Gen. v. Grand Tobacco*, 171 Ohio App.3d 551, 2007-Ohio-418 (10th Dist. Franklin 2007).

{¶ 33} In support of their argument that the Huegemanns failed to allege sufficient facts to bring their conduct within the long-arm statute or applicable civil rule, appellants contend that the Huegemanns' amended complaint "is essentially a breach of contract claim, together with alleged non-performance by * * * [Willy Van] Bakel and * * * VHDD * * * rising to the level of intentionally fraudulent acts designed to obtain money from [the Huegemanns]." Appellants contend that the Huegemanns' amended complaint improperly applies Willy Van Bakel's "wrongful conduct to the alien defendants" named in the action, not by alleging facts of "legal significance," but by making "generalized conclusions." Appellants further contend that these generalized conclusions are insufficient to plead a claim of violations under the corrupt activity act in R.C. 2923.34, because the claimed violations involve fraud. Specifically, appellants assert that the "conclusory allegations" in the Huegemanns' amended complaint "do not rise to the level of fact specific pleading that makes a *prima facie* case as

- 10 -

required by Civ.R. 9(B)." We find these arguments unpersuasive.

{¶ 34} Civ.R. 9(B) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

{¶ 35} The question properly before this court is not whether the Huegemanns pled their fraud allegations in their amended complaint with the specificity required by App.R. 9(B), but whether the trial court erred in overruling appellants' Civ.R. 12(B)(2) motion to dismiss for lack of personal jurisdiction. The Huegemanns, as the nonmoving party, were entitled under Civ.R. 12(B)(2) to have the trial court "view allegations in the pleadings and the documentary evidence in a light most favorable to [them], resolving all reasonable, competing inferences in their favor." *Goldstein*, 70 Ohio St.3d at 236. When the pleadings and documentary evidence in this case are viewed in the light most favorable to the Huegemanns, it is apparent that they have met their burden to make a prima facie showing that the trial court has personal jurisdiction over appellants under the applicable provisions of the long-arm statute in R.C. 2307.382(A) and Civ.R. 4.3.

{¶ 36} Initially, the Huegemanns argue that this court need not consider whether the trial court has personal jurisdiction over appellants under Ohio's long arm statute, because their primary claim against appellants is for violations of the OCAA, which, the Huegemanns assert, "has its own, very broad, jurisdictional statute" in R.C. 2923.34(K), which states:

> Personal service of any process in a proceeding under this section may be made upon any person outside this state if the person was involved in any conduct constituting a violation of section 2923.32 of the Revised Code in this state. The person is deemed by the person's conduct in violation of section 2923.32 of the Revised Code to have submitted to the jurisdiction of the courts of this state for the purposes of this section.

{¶ 37} The Huegemanns contend that they have met the requirements for obtaining personal jurisdiction over appellants under R.C. 2923.34(K) because (1) they obtained personal service on appellants by serving them under the provisions of the Hague

Convention; (2) appellants are "persons" within the meaning of Civ.R. 4.3(A); (3) they alleged sufficient facts to show that appellants were "involved" in "conduct constituting a violation of [R.C.] 2923.32." However, the Huegemenns have not presented any case law in support of their argument, and they acknowledge that the "constitutional limits of [R.C. 2923.34(K)] have never been addressed by an Ohio court[.]" Fortunately, we need not address the Huegemanns' contentions regarding R.C. 2929.34(K), because having reviewed the allegations in their amended complaint and the evidence presented in a light most favorable to them, as required by *Goldstein*, 70 Ohio St.3d 236, we conclude that the Huegemanns have made a sufficient prima facie showing that appellants' conduct falls within the long-arm statute in R.C. 2307.382(A) and the applicable provisions in Civ.R. 4.3(A).

{¶ 38} In January 2007, a Van Bakel company named Midwest Dairy Investments, L.L.C. (MDI) published a confidential "Credit Request" that describes the structure of the Van Bakel organization. This document states that MDI provides long-term financing of dairies built by VHDD, and that MDI is owned by the Vreba-Hoff Dairy Holding Company (Vreba Holding), a group of companies with $50 million in revenues and more than $65 million in assets, which is engaged in developing, operating and financing large-scale modern dairy farms in Michigan, Indiana and Ohio. This document also states that "[t]he Vreba-Hoff companies [e.g., Vreba Holding, Vrebamel, VHDD and Vreba-Hoff Dairy (VHD)] are headquartered in Wauseon, Ohio."

{¶ 39} The Credit Request identifies Willy Van Bakel, an Ohio resident who lives in Wauseon, Ohio, as the CEO of Vreba Holding. Piet Berkhout is identified as the director of the Netherlands Office of Vreba Holding, "who oversees a staff of eight who assist customers in all aspects of their move from the Netherlands to the U.S." The Credit Request document contains an "Ownership Chart," which places "Vreba Holding B.V." (i.e., Vreba Holding) at the top of the chart. Additionally, Vreba Holding owns six Ohio companies, including Midwest Ag

Investments, MDI and VHDD.

{¶ 40} The Huegemanns assert that the centralized control revealed in the Credit Request document allowed the Van Bakel brothers to play a "shell game" to avoid liability for the "pyramid scheme" that is the subject of their lawsuit, and that "[i]f even one foreign company in the Van Bakel enterprise is deemed to be beyond the jurisdiction of Ohio courts, [the money of appellants and the other named defendants] can be easily transferred to that company." As noted earlier, the Huegemanns also allege that TRT Investments is the company now in possession of their money that was intended for the Ohio dairy farm but that was redirected to TRT Investments for "safekeeping[,]" and appellants have failed to present any evidence or argument to refute this allegation.

{¶ 41} The allegations in the Huegemanns' complaint and the evidence in the record show that Rene Van Bakel is subject to the trial court's jurisdiction because he, acting on behalf of VBOG, signed several of the contracts between VBOG and the Huegemanns, including the contracts for the sale of the Huegemanns' dairy farm in Germany and the two contracts calling for the refund of the Huegemanns' money if the Ohio dairy farm was not operational by the end of 2011. The evidence also shows that Rene Van Bakel operates or has operated six Ohio companies that have been named as defendants in this action. Further, Rene Van Bakel acknowledged in his answer to an interrogatory that he "conducted business, directly or indirectly," through MDI "up to September 30, 2009."

{¶ 42} The allegations in the Huegemanns' complaint and the evidence in the record show that Piet Berkhout is subject to the trial court's jurisdiction, since he was an employee of VBOG from 2001 to 2011. The Huegemanns allege that Berkhout was the "primary money manipulator" who directly participated in the execution of the Van Bakel brothers' scheme "by manipulating the books and records of various companies" within the Van Bakel brothers' alleged criminal enterprise and who had custodial control of the Huegemanns'

money that went missing.

{¶ 43} The allegations in the Huegemanns' complaint and the evidence in the record also show that Vrebamel is subject to the trial court's jurisdiction because of its involvement with the parties' fourth contract, the primary purpose of which was to deal with a portion of the German farm proceeds. Vrebamel is the successor company to WaldMilch, which agreed in the parties' fourth contract to pay "immediately" $555,730 to the Huegemanns if their dairy farm was not operational by the end of 2011. This money has never been paid. Finally, the record shows that TRT Investment is subject to the trial court's jurisdiction because the Huegemanns allege that it was the ultimate recipient of the Huegemanns' money that went missing, and TRT Investment has failed to present any evidence showing otherwise.

{¶ 44} We also disagree with appellants' argument that the Huegemanns' amended complaint and "propounded discovery" do not allege facts that "comport with the trial court['s] acquiring personal jurisdiction" consistent with "constitutional due process analysis."

{¶ 45} The due process standard for exercising personal jurisdiction over a nonresident defendant is whether the defendant purposely established "minimum contacts" in Ohio to such an extent that the defendant reasonably should have anticipated being hauled into an Ohio court, *or* whether the defendant has purposely availed itself of the privilege of conducting activities in this state. *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 2001-Ohio-1289; *Anilis, Inc. v. Kern*, 28 Ohio St.3d 165 (1986). This standard may be satisfied even when the defendant never physically entered the forum state, since the key is not whether the defendant entered the forum state but whether the defendant purposefully directed his or her activities toward the forum state. *Jackson v. State Street Bank & Trust Co.*, 110 Ohio App.3d 388 (2d Dist.1996).

{¶ 46} Here, the Huegemanns presented ample evidence to make the requisite prima

- 14 -

facie showing that the trial court had personal jurisdiction over appellants consistent with due process standards. In addition to the evidence cited above regarding whether appellants conduct fell within the state's long-arm statute, both the fourth and fifth contracts between the Huegemanns and appellants contain a preliminary note stating that the Huegemanns intended to emigrate to the United States to establish a new existence, and therefore had given up their existence in Germany when they sold their farm in Germany to VBOG. The signature page of the parties' fifth contract contains the name of three cities: "Vredepeel" (the Netherlands), "Wauseon" (Ohio) and "Selm" (Germany). The language in the preliminary note and signature page strongly indicates that appellants were aware that the Huegemanns intended to enforce the agreements with them in Ohio.

{¶ 47} Because the trial court was obligated to view the allegations in the pleadings and the evidence in the record in the light most favorable to the Huegemanns as the nonmoving party in the Civ.R. 12(B)(2) proceedings, we conclude that the trial court did not err in overruling appellants' motion to dismiss for lack of personal jurisdiction.

{¶ 48} Accordingly, appellants' assignment of error is overruled.

{¶ 49} Judgment affirmed.

HENDRICKSON and M. POWELL, JJ.