THE STATE OF OHIO, APPELLANT, *v.* ANDERSON, APPELLEE.

[Cite as *State v. Anderson,* 138 Ohio St.3d 264, 2014-Ohio-542.]

*Appellate procedure—Final orders—Denial of motion to dismiss for double jeopardy is a final, appealable order—R.C. 2505.02(B)(4).*

(No. 2012-1834—Submitted October 8, 2013—Decided February 19, 2014.)

APPEAL from the Court of Appeals for Mahoning County,

No. 11 MA 43, 2012-Ohio-4390.

_____

**O'CONNOR, C.J.**

**{¶ 1}** In early June 2003, Amber Zurcher was found dead in her home by her mother. Two months later, appellee, Christopher Anderson, was arrested and charged with Zurcher's murder.

**{¶ 2}** Anderson has now been subjected to five trials in seven years. He has been incarcerated for more than a decade, but he has never been lawfully convicted.

**{¶ 3}** When the state attempted to prosecute Anderson for the sixth time, he moved to dismiss the indictment against him. In so doing, he argued that the prosecution was barred by the Double Jeopardy and Due Process Clauses of the United States Constitution.

**{¶ 4}** Our task today is not to determine whether Anderson is guilty of the murder, or even whether he can be forced to stand trial for a sixth time. Rather, we answer a narrower question: Was the trial court's order denying Anderson's motion to dismiss the indictment a final, appealable order that the appellate court had jurisdiction to review? We conclude that it was.

**{¶ 5}** Accordingly, we affirm the appellate court's decision denying the state's motion to dismiss Anderson's appeal, and we remand the cause to the court of appeals to address Anderson's appeal on its merits.

### RELEVANT BACKGROUND

**{¶ 6}** Because the question before us is a question of law, it is not necessary to extensively detail the facts. For our limited purposes here, we summarize the state's evidence against Anderson and the procedural path that brought this appeal before us as they have been described by the appellate court's prior decisions.

### *The Murder*

**{¶ 7}** Facts surrounding the murder and the first two trials are set forth here as stated in the appellate court's opinion in the appeal from the second trial. 7th Dist. Mahoning No. 03 MA 252, 2006-Ohio-4618. On June 2, 2002, Zurcher went to Chipper's Bar in Youngstown. There, she met several friends, including Sandy Shingleton and John Orosz.

**{¶ 8}** After the bar closed, Zurcher and her friends went to Zurcher's apartment in Austintown, where they continued to drink. By 3:50 A.M., only Anderson, Orosz, and Shingleton remained in Zurcher's apartment. When they left, Zurcher was clothed. Orosz locked Zurcher's door from the inside, shut the door, and checked to make sure it was locked. Anderson then drove Orosz and Shingleton to Orosz's pizzeria, where he dropped them off and then departed.

**{¶ 9}** A few hours later, Zurcher's mother, Diane Whiteman, grew concerned because Zurcher had not come to retrieve her son from Whiteman as they had planned. After Zurcher did not answer or respond to Whiteman's repeated phone calls, Whiteman went to Zurcher's apartment building and secured a key to Zurcher's apartment from the building manager.

2

**{¶ 10}** When Whiteman entered the apartment, she found Zurcher's naked, dead body on the floor near the door. There were no signs of forced entry into the apartment and no indication that Zurcher had been robbed.

**{¶ 11}** A deputy coroner determined that Zurcher had died around 4:00 A.M. due to asphyxiation by strangulation. Ligature marks around Zurcher's neck were consistent with the conclusion that Zurcher had been strangled by cord or wire, but neither was recovered from the scene.

**{¶ 12}** Near the time of her death, Zurcher had also sustained a deep scalp contusion and multiple bruises to her body. A contusion on her left breast appeared to be a "love bite," or "hickey." The DNA sample taken from that site was consistent with Anderson's DNA profile. Zurcher's fingernail scrapings contained a mixture of DNA profiles consistent with the DNA of Anderson, Zurcher's son, and a third person. Foreign DNA was not found in Zurcher's oral, vaginal, or rectal cavities.

**{¶ 13}** Zurcher was buried on June 6, 2002. That day, Zurcher's friends gathered again at Chipper's Bar. Anderson arrived wearing a jacket with long sleeves. When he removed it, witnesses noticed that he had scratches on his hand and arms that had not been present three days earlier.

### The Trials and Appeals

**{¶ 14}** The first trial in this case began May 27, 2003. On the day of trial, Anderson successfully moved in limine under Evid.R. 404 to preclude the state from introducing evidence of prior bad acts through testimony from Donna Dripps. The state intended to have Dripps testify that prior to Zurcher's death, Anderson had choked Dripps and bitten one of her breasts.

**{¶ 15}** Although Anderson's motion was granted, another witness, Nichole Ripple, testified during trial that Zurcher had called Anderson "a freak" and that Anderson had "tried to strangle his ex-girlfriend." That portion of Ripple's testimony was repeated on a local evening news broadcast. On

Anderson's motion, the trial court granted a mistrial based on the undue prejudice caused by Ripple's statement.

{¶ 16} A second trial began November 18, 2003. During the second trial, the state was permitted to introduce the same testimony by Dripps that previously had been excluded. The jury found Anderson guilty of murder, and the trial court imposed a prison sentence of 15 years to life.

{¶ 17} The court of appeals, however, found error in the admission of the bad-acts evidence. It reversed Anderson's conviction, finding it "difficult, if not impossible, to correlate the two opposing decisions by the trial court on this matter." 2006-Ohio-4618, ¶ 45. We declined to review that decision. 112 Ohio St.3d 1443, 2007-Ohio-152, 860 N.E.2d 767.

{¶ 18} Subsequent history of the case is set forth in the opinions of the court of appeals concerning the order now on appeal before us. 7th Dist. Mahoning App. No. 11-MA-43, 2012-Ohio-4390.

{¶ 19} A third trial began in December 2008. The jury was unable to return a verdict, and the court declared a mistrial.

{¶ 20} The fourth trial began in April 2010. During voir dire, defense counsel fell asleep. The court declared a mistrial.

{¶ 21} After a fifth trial in August 2010, the jury was again unable to reach a verdict. The court declared another mistrial.

{¶ 22} When the trial court set a sixth trial date, Anderson moved to dismiss the indictment, asserting that making him stand trial a sixth time violated his right to protection from double jeopardy and his right to due process. The trial court denied the motion, and Anderson appealed.

{¶ 23} The state moved to dismiss the appeal, arguing that the denial of Anderson's motion to dismiss was not a final, appealable order. The court of appeals rejected its claim, "finding that in this particular situation where there

4

have been multiple mistrials, the order appealed is a final, appealable order as defined by R.C. 2505.02." 2012-Ohio-4390 at ¶ 1.

{¶ 24} On the state's motion, the court of appeals sat en banc to consider whether the order was final and appealable. The court was equally divided on the issue; two judges agreed that the order was a final, appealable order, and two would have held that it was not. *Id.* Thus, the original appellate court determination—that the order was a final, appealable order—stood. *Id.* at ¶ 30.

{¶ 25} We accepted the state's discretionary appeal, which asserts that the denial of a motion to dismiss on due-process and double-jeopardy grounds is not a final, appealable order pursuant to R.C. 2505.02. 134 Ohio St.3d 1448, 2013-Ohio-347, 982 N.E.2d 727. We disagree.

{¶ 26} We hold that the denial of a motion to dismiss on double-jeopardy grounds is a final, appealable order. We affirm the judgment of the court of appeals to the extent that it held that the denial of a motion to dismiss on double-jeopardy grounds is a final, appealable order. We need not, and do not, reach the issue of a whether a motion to dismiss on due-process grounds is also a final, appealable order.

## ANALYSIS

{¶ 27} We are presented with two important considerations: the prudential concerns that limit which orders an appellate court can review and the constitutional protections against double-jeopardy violations. Although we have not specifically addressed the issue in light of the General Assembly's most recent amendments to the definition of "final order" in R.C. 2505.02, we do not write on a blank slate. Indeed, we have answered this important question repeatedly, but admittedly inconsistently, over the years.

{¶ 28} The requirement of a final, appealable order is equally important in both civil and criminal cases. "An appellate court can review only final orders, and without a final order, an appellate court has no jurisdiction." *Supportive*

*Solutions, L.L.C. v. Electronic Classroom of Tomorrow*, 137 Ohio St.3d 23, 2013-Ohio-2410, 997 N.E.2d 490, ¶ 10.

{¶ 29} R.C. 2953.02 authorizes appellate courts to review the judgment or final order of a trial court in a criminal case. *State v. Muncie*, 91 Ohio St.3d 440, 444, 746 N.E.2d 1092 (2001). To determine whether the order issued by the trial court in a criminal proceeding is a final, appealable order, appellate courts must apply the definitions of "final order" contained in R.C. 2505.02. *Id.*, citing *State ex rel. Leis v. Kraft*, 10 Ohio St.3d 34, 36, 460 N.E.2d 1372 (1984).

{¶ 30} Here, the specific question before us is whether the denial of a motion to dismiss on double-jeopardy grounds is a final, appealable order within the meaning of the statute.

{¶ 31} In *Owens v. Campbell*, 27 Ohio St.2d 264, 272 N.E.2d 116 (1971), syllabus, we held that an accused could invoke the original jurisdiction of Ohio's appellate courts through extraordinary writs to adjudicate his right against being placed in double jeopardy. But less than a decade later, we overruled that holding.

{¶ 32} In *State v. Thomas*, 61 Ohio St.2d 254, 400 N.E.2d 897 (1980), syllabus, we unanimously held that the accused has the right to immediately appeal the denial of a motion to dismiss that is predicated on double-jeopardy grounds. In so doing, we made clear the importance of providing an immediate appeal in such a situation:

It is clear that the Double Jeopardy Clause is a guarantee against being twice put to trial for the same offense. *Abney v. United States* (1977), 431 U.S. 651, 661 [97 S.Ct. 2034, 52 L.Ed.2d 651]. It is equally clear that an order affecting a right of constitutional dimensions is an "order affecting a substantial right," within the contemplation of R.C. 2505.02. It would seem

reasonable to conclude that some form of review prior to judgment is necessary to preserve this right. *Id.* at page 660.

* * *

We believe that a proceeding on a motion to dismiss for double jeopardy should be considered a special proceeding as well. A claim of double jeopardy raises an issue entirely collateral to the guilt or innocence of the defendant. While it is a complete defense, it is more than that, for it, in principle, bars a new trial as well as a new conviction. Additionally, an erroneous decision on a double jeopardy claim cannot be effectively reviewed after judgment within the second trial; by that time, the defendant's right has been violated.

We hold, therefore, that the overruling of a motion to dismiss on the ground of double jeopardy is a final appealable order under R.C. 2953.02 and 2505.02. *Owens v. Campbell* ([1971], 27 Ohio St.2d 264 [272 N.E.2d 116]) is hereby overruled.

*Id.* at 258.

{¶ 33} Ten years after *Thomas*, we again abruptly changed course in *State v. Crago*, 53 Ohio St.3d 243, 559 N.E.2d 1353 (1990).

{¶ 34} In *Crago*, we held that a defendant cannot appeal the denial of a motion to dismiss based on double jeopardy until after the trial is concluded. Our explanation in *Crago* was conclusory and based solely on the definition of "final order" in R.C. 2505.02.

{¶ 35} Specifically, we noted that R.C. 2505.03(A) directs that every "final order" may be reviewed on appeal. At the time, "final order" was defined as follows:

> An order that affects a substantial right in an action which in effect determines the action and prevents a judgment, an order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order that vacates or sets aside a judgment or grants a new trial is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial.

Former R.C. 2505.02, 1986 Am.Sub.H.B. No. 412, 141 Ohio Laws, Part II, 3563, 3597.

{¶ 36} We summarily determined that "the denial of a motion to dismiss on the basis of double jeopardy is not a 'final order' with the meaning of R.C. 2953.02 as the definition of 'final order' contained in R.C. 2505.02 is applicable to criminal proceedings." *Id.* at 244-245. We then proceeded to overrule *Thomas*, without further explication. *Id.* at 245.

{¶ 37} Shortly after *Crago*, we decided *Wenzel v. Enright*, 68 Ohio St.3d 63, 623 N.E.2d 69 (1993). Applying *Crago*, a slim majority of this court held that neither an extraordinary writ nor an interlocutory appeal was available to an accused after the denial of a motion to dismiss on double-jeopardy grounds. *Id*. at paragraph one of the syllabus. We held that the accused may seek review only on direct appeal, at the conclusion of the proceedings. *Id*. at paragraph two of the syllabus.

{¶ 38} Our decision in *Crago* has been questioned by members of this court and the appellate courts. *E.g.*, *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, 973 N.E.2d 243, ¶ 42 (Lanzinger, J., concurring) and ¶ 55 (McGee Brown, J., concurring); *State v. Anderson*, 2012-Ohio-4390, ¶ 31 (DeGenaro, J., concurring); *Mentor v. Babul*, 11th Dist. Lake No. 98-L-244, 1999 WL 820583, *4 (July 16, 1999) (holding that the denial of a motion to dismiss on double-

jeopardy grounds is not a final, appealable order, but noting "the very persuasive argument that can be made in support of the immediate exercise of appellate jurisdiction" because of "the unique nature" of the motion).   But in order to resolve this appeal, we need not delve into the merits, or lack thereof, of *Crago*.

{¶ 39} As we have in other cases, we decide the appeal based on the new statutory language, which altered the language that was dispositive to our decision in *Crago*.  *See, e.g.*, *State v. Chambliss,* 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651 (departing from the court's prior holding in *State ex rel. Keenan v. Calabrese,* 69 Ohio St.3d 176, 631 N.E.2d 119 (1994), which held, under a previous version of R.C. 2505.02, that an order denying a defendant's counsel of choice was not a final, appealable order).

### The 1998 Amendments to R.C. 2505.02

{¶ 40} In 1998, the General Assembly amended R.C. 2505.02.   1998 Sub.H.B. No. 394, 147 Ohio Laws, Part II, 3277, 3278.   The prior language of R.C. 2505.02 "was more restrictive concerning what constitutes a final, appealable order than the one currently in effect."  *State v. Upshaw*, 110 Ohio St.3d 189, 2006-Ohio-4253, 852 N.E.2d 711, ¶ 7.   Put another way, the revised language now in place is more extensive than the language we construed in *Crago*.

{¶ 41} Most notably, through Sub.H.B. No. 394, the General Assembly expanded the definition of a "final order" to include two additional categories: (1) orders that grant or deny a "provisional remedy" and otherwise satisfy certain specified criteria and (2) orders that determine whether an action may be maintained as a class action.  The latter category is clearly inapplicable here, and

our analysis will focus on whether an order that denies a motion to dismiss on double-jeopardy grounds is a provisional remedy.[1]

{¶ 42} R.C. 2505.02(B)(4) provides:

(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

* * *

(4) An order that grants or denies a provisional remedy and to which both of the following apply:

(a) The order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy.

(b) The appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action.

Thus, in order to qualify as a final, appealable order under R.C. 2505.02(B)(4), three requirements must be satisfied: (1) the order must grant or deny a provisional remedy as that term is defined in the statute, (2) the order must in effect determine the action with respect to the provisional remedy, and (3) the appealing party would not be afforded a meaningful review of the decision if that party had to wait for final judgment as to all proceedings in the action. *Upshaw,*

---

1. In so doing, we need not revisit *Crago*'s decision that the denial of a motion to dismiss predicated on double-jeopardy grounds did not fall within any of the three original categories of final orders described in R.C. 2505.02(B)(1) through (3).

110 Ohio St.3d 189, 2006-Ohio-4253, 852 N.E.2d 711, ¶ 15, citing *Muncie,* 91 Ohio St.3d at 446, 746 N.E.2d 1092.

{¶ 43} For the reasons that follow, we conclude that the denial of a motion to dismiss on double-jeopardy grounds satisfies these requirements.

### *A motion to dismiss on double-jeopardy grounds is a provisional remedy*

{¶ 44} A "provisional remedy" for purposes of defining "final order" is "a proceeding ancillary to an action." R.C. 2505.02(A)(3).

{¶ 45} The statute sets forth as examples, introduced by the phrase "including, but not limited to," certain types of proceedings that fall within the definition of an ancillary proceeding, including motions to suppress evidence. The statutory phrase "including, but not limited to" means that the examples expressly given are "a *nonexhaustive* list of examples." (Emphasis sic.) *Muncie,* 91 Ohio St.3d at 448, 746 N.E.2d 1092, citing *State v. Lozano*, 90 Ohio St.3d 560, 562, 740 N.E.2d 273 (2001); *Boedeker v. Rogers*, 140 Ohio App.3d 11, 18, 746 N.E.2d 625 (2000) (noting that by its express terms, the list of provisional remedies in R.C. 2505.02(A)(3) is "illustrative and not exhaustive"). Thus, the failure to include a motion to dismiss in the list does not undermine the notion that a motion to dismiss is an ancillary proceeding.

{¶ 46} Because the statute does not define the term "ancillary proceedings," we must define it according to its plain, common, ordinary meaning. R.C. 1.42.

{¶ 47} As we recognized in *Muncie*, "for purposes of R.C. 2505.02(A)(3)'s definition, '[a]n ancillary proceeding is one that is attendant upon or aids another proceeding.' " *Muncie* at 449, quoting *Bishop v. Dresser Industries,* 134 Ohio App.3d 321, 324, 730 N.E.2d 1079 (1999). An ancillary proceeding is an "ancillary suit," *Black's Law Dictionary* 101 (9th Ed.2009), i.e., "[a]n action, either at law or in equity, that grows out of and is auxiliary to

another suit and is filed to aid the primary suit, to enforce a prior judgment, or to impeach a prior decree." *Id.* at 1572.

{¶ 48} We have little trouble concluding that a motion to dismiss on double-jeopardy grounds is an ancillary proceeding.

{¶ 49} A motion to dismiss on double-jeopardy grounds "grows out of" the primary suit, i.e., the prosecution. The act of prosecution triggers a defendant's constitutional protection against double jeopardy. A motion to dismiss is certainly "attendant" upon the underlying prosecution because it is "consequent; concomitant; associated; [and] related" to the prosecution. *The Random House Dictionary of the English Language* 133 (1987).

{¶ 50} As one commentator has recognized, a motion to dismiss on double-jeopardy grounds is

> separate from and entirely collateral to the substantive issues at trial. The defendant's right not to be tried has nothing to do with guilt or innocence. The proceeding on the issue is independent of the main trial * * *. Such a position is entirely consistent with the court's willingness to broadly define what constitutes an ancillary hearing and thus a "provisional remedy" under R.C. 2505.02(A)(3).

John Paul Sellers III, *Between a Rock and a Hard Place: Does Ohio Revised Code Section 2505.02 Adequately Safeguard a Person's Right Not to Be Tried?*, 28 Ohio N.U.L.Rev. 285, 299 (2002). We agree.

{¶ 51} A motion to dismiss on the basis of double jeopardy is a provisional remedy satisfying the first prong of the analysis.

### *A motion to dismiss on double-jeopardy grounds can determine the action*

{¶ 52} We thus turn to the second prong: whether the motion in effect determines the action. Orders denying a motion to dismiss an indictment on double-jeopardy grounds "constitute a complete, formal, and, in the trial court, final rejection of a criminal defendant's double jeopardy claim." *Abney v. United States*, 431 U.S. at 659, 97 S.Ct. 2034, 52 L.Ed.2d 651. And orders granting a motion to dismiss generally end the prosecution. We thus have no trouble concluding that a decision on a motion to dismiss on double-jeopardy grounds determines the action because it permits or bars the subsequent prosecution.

### *Absent an interlocutory appeal from the denial of a motion to dismiss on double-jeopardy grounds, the moving party would not be afforded meaningful review of the decision*

{¶ 53} We turn now to the third and final prong of the test for final, appealable orders for purposes of R.C. 2505.02(A)(3): whether the appealing party would not be afforded a meaningful review of the decision if that party had to wait for final judgment as to all proceedings in the action.

{¶ 54} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution ensures that a state may not put a defendant in jeopardy twice for the same offense. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The "basic theory" underlying the doctrine of double jeopardy "is that it is wrong for one to be subjected more than once *to the danger of being punished* for an offense." (Emphasis added.) *State v. Best*, 42 Ohio St.2d 530, 532, 330 N.E.2d 421 (1975).

{¶ 55} The denial of an interlocutory appeal to an accused arguing that a prosecution is barred by double jeopardy vitiates one of the very protections the Constitution provides: the right not to be improperly forced to stand trial repeatedly for the same offense.

**{¶ 56}** As the Supreme Court has explained:

[The] protections [of the Double Jeopardy Clause] would be lost if the accused were forced to "run the gauntlet" a second time before an appeal could be taken; even if the accused is acquitted, or, if convicted, has his conviction ultimately reversed on double jeopardy grounds, he has still been forced to endure a trial that the Double Jeopardy Clause was designed to prohibit. Consequently, *if a criminal defendant is to avoid exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs.*

(Emphasis added in part, and footnote omitted.) *Abney,* 431 U.S. at 662, 97 S.Ct. 2034, 52 L.Ed.2d 651.

**{¶ 57}** In *Wenzel*, a slim majority of this court relied heavily on *Crago* to hold that *Abney* does not mandate that a state provide a mechanism for an interlocutory appeal from the denial of a motion to dismiss on double-jeopardy grounds. *Wenzel*, 68 Ohio St.3d at 67, 623 N.E.2d 69, fn. 1. That analysis has been described as "superficially dismissive" and has been criticized for failing to address the constitutional analysis set forth in *Abney. Anderson*, 2012-Ohio-4390, ¶ 38 (DeGenaro, J., concurring). That criticism is not unfair, particularly given that after *Crago* and *Wenzel*, a defendant's only way to secure pretrial judicial review of the denial of the motion to dismiss on double-jeopardy grounds was through federal habeas relief. *See, e.g., Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997); *Lucas v. Hamilton Cty. Mun. Ct.*, S.D.Ohio No. 1:12-cv-138, 2012 WL 1986680, *4 (June 4, 2012) (in finding that the prisoner-petitioner had exhausted his state-court remedies before seeking federal habeas relief, the court noted the

14

state's concession that there is no right to an interlocutory appeal from a motion to dismiss on double-jeopardy grounds and rejected the state's argument that mandamus is available to secure pretrial review of a double-jeopardy claim). Yet *Abney* makes clear that as a matter of federal constitutional law, retrial itself is one of the harms at issue in double-jeopardy cases. That harm cannot be remedied by a subsequent acquittal in the trial court or by the reversal of any conviction through appeal after trial.

{¶ 58} " 'A post-conviction appeal may offer *a* remedy, but not an *adequate* one * * *.' (Emphasis sic.)" *Chambliss,* 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651, at ¶ 26, quoting *State ex rel. Keenan*, 69 Ohio St.3d at 180, 631 N.E.2d 119 (Pfeifer, J., dissenting). In the context of double jeopardy, we agree that a postconviction appeal is not an adequate remedy "because the protection against double jeopardy is not just protection against being punished twice for the same offense, it is also the protection against being tried twice for the same offense." *Wenzel*, 68 Ohio St.3d at 68, 623 N.E.2d 69 (Wright, J., dissenting).

{¶ 59} We therefore conclude that an accused would not be afforded a meaningful review of an adverse decision on a motion to dismiss and discharge on double-jeopardy grounds if that party must wait for final judgment as to all proceedings in order to secure review of the double-jeopardy decision.

### The Denial of a Motion to Dismiss on Double-Jeopardy Grounds Is a Final, Appealable Order

{¶ 60} Having determined that an order denying a motion to dismiss on double-jeopardy grounds denies a "provisional remedy" as that term is defined in the statute, that the order in effect determines the action with respect to the provisional remedy, and that the appealing party would not be afforded a meaningful review of the decision if that party had to wait for final judgment as to all proceedings in the action, we hold that the order is a final, appealable order. In

so doing, we are not bound by *Crago*, which was decided on a different, narrower statutory definition, or by *Wenzel*, which relied on the decision in *Crago*.

### CONCLUSION

{¶ 61} We hold that an order denying a motion to dismiss on double-jeopardy grounds is a final, appealable order. Thus, the trial court's denial of Anderson's motion to dismiss was a final, appealable order. We therefore affirm the order of the court of appeals and remand the cause to that court to consider Anderson's appeal on its merits.

Order affirmed.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Paul J. Gains, Mahoning County Prosecuting Attorney, and Ralph M. Rivera, Assistant Prosecuting Attorney, for appellant.

John B. Juhasz, for appellee.

Timothy Young, Ohio Public Defender, and Stephen P. Hardwick, Assistant Public Defender, urging affirmance for amicus curiae, Office of the Ohio Public Defender.

_____