[Cite as *State v. Jama*, 2017-Ohio-7682.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

      Plaintiff-Appellee,                     :                     No. 17AP-166
                                                                                              (C.P.C. No. 15CR-3899)

v.                                                            :

                                                                                        (REGULAR CALENDAR)

Hanad S. Jama,                                       :

      Defendant-Appellant.               :

---

D E C I S I O N

Rendered on September 19, 2017

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** *Gerald G. Simmons*, for appellant. **Argued:** *Gerald G. Simmons*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Hanad S. Jama, appeals from a judgment of the Franklin County Court of Common Pleas denying his motion to dismiss based on double jeopardy. Because we conclude that the Double Jeopardy Clause does not prohibit retrial of appellant following the trial court's declaration of a mistrial, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellant was indicted on one count of kidnapping, three counts of rape, one count of felonious assault, one count of domestic violence, and two counts of failure to comply with an order or signal of a police officer. A jury trial on all charges commenced on November 28, 2016. During the afternoon of November 28, and the morning of November 29, 2016, voir dire was conducted and a jury was impaneled, and the parties made opening statements. On the afternoon of November 29, 2016, the prosecution's witness, F.M., testified on direct examination. F.M. testified that appellant physically

assaulted and raped her.  F.M. testified in specific detail regarding the incident and her injuries.  Following the completion of her direct testimony, appellant's counsel began to conduct cross-examination of F.M.  As part of the cross-examination, appellant's counsel sought to use a transcript of F.M.'s interview with a police detective to refresh her recollection of that interview.  The prosecutor objected to the use of the transcript rather than a recording of the interview, and the trial court conducted a discussion with counsel outside the presence of the jury.  At the conclusion of that discussion, the trial court adjourned trial for the day without appellant's counsel completing his cross-examination of F.M.

{¶ 3}   Trial resumed on December 1, 2016, and F.M. did not appear to continue testifying on cross-examination. The trial court conducted a sidebar conference with counsel; no transcription of this sidebar conference is contained within the record before this court.  The jury was then instructed that the prosecution would be presenting a witness out of order, and that further testimony from F.M. might be presented if necessary.  During the morning of December 1, the prosecutor presented testimony from a Columbus police officer who responded to a 911 call that F.M. placed and spoke with F.M. after the incident.  The prosecutor also presented testimony from another Columbus police officer who, while responding to the 911 call, saw appellant leaving the area in a vehicle and ordered him to stop. The officer was involved a pursuit of appellant's vehicle when he refused to stop and a subsequent additional pursuit of appellant when he fled on foot.  The state also called as a witness another Columbus police officer who was involved in the search for appellant and ultimately arrested him.

{¶ 4}   After the state presented these witnesses, the court held a discussion with counsel outside the presence of the jury. Appellant's counsel stated that it was his understanding that F.M. could not be located, despite the state's efforts to locate her. Appellant's counsel moved to dismiss the charges of rape, felonious assault, kidnapping, and domestic violence "for lack of prosecution." (Tr. Vol. II at 54.)  The prosecutor stated that a detective had been sent to the address where F.M. had been served and spoken with someone there who indicated that F.M. had left for court that morning with her sister. The prosecutor further stated that police officers had been dispatched to two other potential addresses for F.M.  The prosecutor indicated that if F.M. could not be located, the state intended to proceed with the trial on all charges.  The prosecutor acknowledged

that it might be necessary to strike F.M.'s testimony. Appellant's counsel argued it would be impossible for the jury to set aside F.M.'s direct testimony regardless of any instruction from the court, and that because he was not able to cross-examine F.M. the case should not proceed on the major felony charges. The trial court indicated that it was not prepared to grant a motion to dismiss and stated that the prosecution would be granted more time to try and locate F.M.

{¶ 5} Following lunch recess, the prosecutor indicated further efforts had been taken to locate F.M., including a request to her cell phone provider to track her phone location, but the state had not been able to locate F.M. The prosecutor suggested there was a possibility that F.M. was not voluntarily absent from court, but appellant's counsel disputed this suggestion. The trial court stated that if F.M. could not be located by the following morning, certain charges would have to be dismissed:

> The Court: I know. You've worked very hard on this case. I will tell you that I understand that you think that you can proceed without her, but the issue is that she already started testifying and the cross-examination was not complete.
>
> [Prosecutor]: I understand.
>
> The Court: And so since that bell cannot be un-rung, if she's not located by the start of court tomorrow morning I don't think there is any option but to dismiss the charges, the Rapes, the Felonious Assault, the DV and Kidnapping.

(Tr. Vol. II at 60-61.) The trial court indicated that the only remaining charges would be failure to comply. Appellant's counsel stated that it would be possible to resolve the failure to comply counts because appellant admitted he did not comply with police orders, although he disputed the degree of the offenses. The trial court indicated that the state would be given until the following morning to locate F.M. Following this discussion, the trial court permitted the prosecutor to present testimony from the sexual assault nurse examiner who examined F.M. and the Columbus police crime scene detective who collected evidence from appellant's vehicle.

{¶ 6} When trial resumed on December 2, 2016, F.M. again did not appear to continue her testimony. After making a record of the state's efforts to locate F.M., the prosecutor argued the case should proceed on all counts based on the other evidence presented by the state—i.e., the testimony of the sexual assault nurse examiner and the

police officers. The prosecutor argued appellant's counsel was essentially seeking a mistrial by another name, but asserted that the state opposed a mistrial. Appellant's counsel argued it would be impossible for the jury to disregard F.M.'s testimony and the court should dismiss all claims related to F.M.'s testimony.

{¶ 7} The trial court declared that because appellant's counsel was not fully able to cross-examine F.M. it was impossible to have a fair trial and there was a manifest necessity to declare a mistrial on all charges. The trial court requested the parties file briefs on the issue of whether the mistrial prohibited retrial of appellant. Appellant filed a motion to dismiss, asserting that retrial was barred by the Double Jeopardy Clause. The trial court issued a judgment denying appellant's motion to dismiss, holding that because the mistrial had been declared due to a manifest necessity arising from F.M.'s failure to appear to testify on cross-examination, retrial would not violate the Double Jeopardy Clause.

## II. Assignment of Error

{¶ 8} Appellant appeals and assigns the following sole assignment of error for our review:

> THE TRIAL COURT ERRED BY DECLARING A MISTRIAL
> WITH MANIFEST NECESSITY.

## III. Discussion

{¶ 9} We begin by noting that the Supreme Court of Ohio has held that an order denying a motion to dismiss based on double jeopardy is a final, appealable order because it denies a provisional remedy, has the effect of determining the action with respect to that provisional remedy, and the appealing party would not be afforded a meaningful review of the decision if required to wait for final judgment as to all proceedings in the action. *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, ¶ 60. Accordingly, this court has jurisdiction over the present appeal. *See, e.g., Jack Maxton Chevrolet, Inc. v. Hanbali*, 10th Dist. No. 15AP-816, 2016-Ohio-1244, ¶ 6 ("Courts of appeals have jurisdiction to review final orders of lower courts.").

{¶ 10} Appellant argues the trial court erred by denying his motion to dismiss based on double jeopardy. The trial court concluded that double jeopardy did not prohibit retrial of appellant because there was a manifest necessity for the court's earlier mistrial declaration. We apply a de novo standard of review to a decision denying a motion to

dismiss on double jeopardy grounds. *State v. Jordan*, 10th Dist. No. 14AP-978, 2015-Ohio-4457, ¶ 10. *See also State v. Mutter*, __ Ohio St.3d __, 2017-Ohio-2928, ¶ 13 ("Appellate courts review de novo the denial of a motion to dismiss an indictment on the grounds of double jeopardy, because it is a pure question of law.").

{¶ 11} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy." Article I, Section 10 of the Ohio Constitution affords similar protection. *See Mutter* at ¶ 15 ("The protections afforded by the Ohio and United States Constitutions' Double Jeopardy Clauses are coextensive."). "Under double jeopardy principles, 'the issue of whether subsequent prosecution can be had after a mistrial has been declared is dependent on two things: first, whether jeopardy has attached and, second, whether, if jeopardy has attached, a retrial is barred by the Constitution or falls within an exception.' " *State v. Mengistu*, 10th Dist. No. 02AP-497, 2003-Ohio-1452, ¶ 24, quoting *Cleveland v. Wade*, 8th Dist. No. 76652 (Aug. 10, 2000). Jeopardy attaches in a jury trial once the jury is impaneled and sworn. *Id.* In this case, the jury had been impaneled and sworn, and the trial was well underway when the court declared a mistrial. Therefore, jeopardy had attached and we turn our attention to whether any exception to the Double Jeopardy Clause exists that would permit appellant to be retried after the trial court's mistrial declaration.

{¶ 12} "When a trial court grants a criminal defendant's request for a mistrial, the Double Jeopardy Clause does not bar a retrial." *State v. Matthews*, 10th Dist. No. 11AP-532, 2012-Ohio-1154, ¶ 18, citing *State v. Loza*, 71 Ohio St.3d 61, 70 (1994).[1] *See also United States v. Scott*, 437 U.S. 82, 93 (1978) ("Where, on the other hand, a *defendant* successfully seeks to avoid his trial prior to its conclusion by a motion for mistrial, the Double Jeopardy Clause is not offended by a second prosecution." (Emphasis sic.)). The United States Supreme Court has similarly held that the Double Jeopardy Clause does not prohibit a retrial when a court grants a criminal defendant's motion to dismiss a case on a basis other than guilt or innocence. "[T]he defendant, by deliberately choosing to seek

---

[1] We note that "[a] narrow exception [to the rule that the Double Jeopardy Clause does not bar a retrial when a trial court grants a criminal defendant's request for a mistrial] lies where the request for a mistrial is precipitated by prosecutorial misconduct that was intentionally calculated to cause or invite a mistrial." *Matthews* at ¶ 18, citing *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). There was no allegation of prosecutorial misconduct in the present case and nothing in the record to suggest any such misconduct leading to the mistrial declaration.

termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant." *Scott* at 98-99. The court noted that a criminal defendant has a valued right to have his guilt or innocence determined before the first trier of fact, but that this right must be balanced against the public interest in insuring that justice is served on offenders. *Id.* at 92-94. By choosing to seek dismissal on a basis other than guilt or innocence, the defendant is deemed to have deliberately chosen to forgo the right to have his case determined by the first trier of fact. *Id.* at 93. Accordingly, "[n]o interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant." *Id.* at 100.

{¶ 13} Appellant did not move for a mistrial in this case; however, by moving to dismiss for lack of prosecution when F.M. did not appear to testify on cross-examination, appellant sought "termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he [was] accused." *Id.* at 98-99. In moving to dismiss the charges related to F.M.'s testimony, appellant's counsel did not claim that the state failed to prove its case against appellant. Rather, he argued that because F.M. testified on direct examination but he had been unable to cross-examine her, appellant's rights had been violated and it was impossible for him to receive a fair trial. Appellant's counsel asserted the jury would be unable to disregard F.M.'s testimony, even if instructed to do so by the court.

{¶ 14} Although the trial court declared a mistrial in this case rather than granting appellant's motion to dismiss, the underlying principle of the *Scott* decision applies with equal force here—double jeopardy protection does not apply because the trial was terminated on a basis other than appellant's guilt or innocence of the charges against him. Moreover, had the trial court granted appellant's motion to dismiss for lack of prosecution instead of declaring a mistrial, the Double Jeopardy Clause would not have barred retrial. *See Scott* at 98-99; *State v. Broughton*, 62 Ohio St.3d 253 (1991), paragraph three of the syllabus ("Where jeopardy has attached during the course of a criminal proceeding, a dismissal of the case may be treated in the same manner as a declaration of a mistrial and will not bar a subsequent trial when: (1) the dismissal is based on a defense motion, and

(2) the court's decision in granting such motion is unrelated to a finding of factual guilt or innocence."). *See also State v. Malinovsky*, 60 Ohio St.3d 20 (1991), paragraph two of the syllabus ("The Double Jeopardy Clause does not bar reprosecution where a criminal prosecution is dismissed for failure to prosecute after the trial court has erroneously required the state to proceed with trial despite the state's properly filed Crim.R. 12(J) appeal."). Because retrial would not have been barred by the Double Jeopardy Clause if the trial court had granted appellant's motion to dismiss, we conclude that, under these circumstances, the Double Jeopardy Clause does not prohibit retrial following the court's declaration of a mistrial. Therefore, the court did not err by denying appellant's motion to dismiss based on double jeopardy.

{¶ 15} Alternatively, if we disregard appellant's attempt to terminate the case on a basis other than guilt or innocence through his motion to dismiss for lack of prosecution and solely consider the trial court's mistrial declaration as a sua sponte act, the Double Jeopardy Clause would not prohibit a retrial of appellant. "In a case in which a mistrial has been declared 'without the defendant's request or consent, double jeopardy will not bar a retrial if (1) there was a manifest necessity or a high degree of necessity for ordering a mistrial; or (2) the ends of public justice would otherwise be defeated.' " *Mengistu* at ¶ 26, quoting *Wade*. "What constitutes a 'manifest necessity' is left to the discretion of the courts, which must 'exercise a sound discretion on the subject [as] it is impossible to define all the circumstances, which would render it proper to interfere.' " *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, ¶ 26, quoting *United States v. Perez*, 22 U.S. 579, 580 (1824). In determining whether a manifest necessity exists such that a mistrial is necessary, the trial judge must act "rationally, responsibly, and deliberately." *Id.* at ¶ 33.

{¶ 16} F.M. testified on direct examination in great detail about the events leading to the rapes, kidnapping, felonious assault, and domestic violence charges. Her direct-examination testimony was extensive, comprising 47 pages of the printed trial transcript. F.M.'s direct testimony also served to authenticate a recording of a 911 call that F.M. made and a video taken from a surveillance camera showing a portion of the events F.M. described, both of which were played for the jury, along with photographs of F.M.'s injuries. Appellant's counsel suggested that he intended to impeach portions of F.M.'s trial testimony based on her earlier statements to police detectives; however, he was prohibited from doing so when F.M. failed to appear to testify on cross-examination. The

trial court concluded that this was prejudicial to appellant and created a manifest necessity for a mistrial.

{¶ 17} Appellant argues the trial court abused its discretion in concluding that there was a manifest necessity for a mistrial, citing the Supreme Court's decision in *Gunnell*. In that case, the trial court declared a mistrial after jury deliberations had commenced because a juror brought to court papers containing definitions of the terms perverse and involuntary manslaughter that she had obtained from the internet. *Gunnell* at ¶ 9-11. The trial court and counsel conducted voir dire of the juror and she indicated that she had not shared the definitions with any other members of the jury. *Id.* at ¶ 11. Both the prosecutor and defense counsel initially indicated that they believed jury deliberations could continue if the juror was given a proper curative instruction, but the trial court suggested that the juror would not be able to disregard the definitions she had obtained. *Id.* at ¶ 13. After a brief recess, the prosecutor moved for a mistrial, which the trial court granted over the defendant's objection. *Id.* at ¶ 15. On appeal, the Supreme Court held that the trial court abused its discretion by declaring a mistrial. The court found that the trial court's inquiry into any potential bias held by the juror was limited and ineffective. The Supreme Court concluded that the trial court declared a mistrial based on mere speculation of prejudice and that the record failed to establish anything to support a conclusion that the juror was biased. *Id.* at ¶ 31-40.

{¶ 18} While *Gunnell* involved improper conduct by a single juror, in the present case the entire jury was exposed to F.M.'s testimony. Presumably, a curative instruction in *Gunnell* would have instructed the single juror to disregard the two improper definitions she had obtained. By contrast, in the present case the full jury would have to be instructed to disregard all of F.M.'s testimony. The Supreme Court noted in *Gunnell* that the trial court reached its decision to declare a mistrial in a very short span of time. Here, the trial court and counsel discussed the potential implications of F.M. failing to return for cross-examination during multiple sessions across two days. Additionally, in *Gunnell* the defendant opposed the declaration of mistrial and argued that the trial could continue if a proper curative instruction was given. As explained above, in this case appellant sought dismissal of the charges and argued the trial should not proceed because the jury would be unable to disregard F.M.'s testimony.

{¶ 19} Under the circumstances presented here, given the nature of F.M.'s testimony and the important constitutional right to cross-examination that was hindered by her failure to return for cross-examination, we find that the trial court acted rationally, responsibly, and deliberately in determining that a manifest necessity existed requiring a mistrial. *See Gunnell* at ¶ 33. *Compare State v. Henness*, 10th Dist. No. 94APA02-240 (Feb. 6, 1996) (holding that trial court did not abuse its discretion by failing to declare a mistrial when a witness failed to appear for cross-examination after giving direct testimony and only returned to trial one week later, where court concluded that there was no prejudicial error arising from the fact that the defense was required to withhold conducting its cross-examination for one week). Because the trial court did not abuse its discretion by declaring a mistrial due to manifest necessity, the Double Jeopardy Clause does not bar a retrial of appellant and the trial court did not err by denying appellant's subsequent motion to dismiss based on double jeopardy.

## IV. Conclusion

{¶ 20} For the foregoing reasons, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and KLATT, J., concur.

———————————