[Cite as *State v. Ott*, 2019-Ohio-2374.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.    18CA0016-M |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANIEL C. OTT | | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | | CASE No.    17CR0570 |

DECISION AND JOURNAL ENTRY

Dated: June 17, 2019

SCHAFER, Judge.

**{¶1}** Defendant-Appellant, Daniel C. Ott, appeals from the order denying his motion to bar retrial in the Medina County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**{¶2}** On July 12, 2017, the Medina County Grand Jury returned an indictment charging Mr. Ott with one count of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree. Mr. Ott entered a plea of not guilty to the charge. The matter proceeded to a jury trial on October 31, 2017.

**{¶3}** On the second day of trial, an incident involving potential jury tampering was brought to the trial court's attention. Mr. Ott, while in the courtroom and outside of the presence of the trial judge and counsel, complained to his adult son about two of the jurors and passed the son a legal pad with a list containing the jurors' information. The son left the courtroom with

this list after stating to Mr. Ott his intention to "run" juror information. Following a brief hearing on the record, the trial court sua sponte declared a mistrial based on the actions of Mr. Ott and his son, which created a cause for concern regarding the jurors.

{¶4} The trial court issued a November 1, 2017 journal entry indicating, inter alia, that the court had declared a mistrial that same day and dismissed the jury. The trial court scheduled a new jury trial to commence on January 22, 2018. On January 5, 2018, Mr. Ott, having obtained new trial counsel, filed a motion to bar retrial on double jeopardy grounds. In the motion he argued that no manifest necessity existed to warrant a mistrial and alleged that the trial court failed to consider reasonable alternatives prior to granting a mistrial. In its February 28, 2018 journal entry, the trial court denied the motion to bar retrial, finding that "there was a high degree of necessity for declaring a mistrial in this matter due to [Mr.] Ott's intentional misconduct."

{¶5} Mr. Ott timely appealed the trial court's order denying his motion to bar mistrial and presents two assignments of error for our review.

II.

## Assignment of Error I

**The trial court erred by denying Mr. Ott's motion to bar retrial because the trial court's journalization of the mistrial gave no reason for ordering it, and a court speaks through its journal.**

{¶6} In his first assignment of error, Mr. Ott challenges the trial court's denial of his motion to bar retrial. "[T]he denial of a motion to dismiss on double-jeopardy grounds is a final, appealable order." *State v. Anderson*, 138 Ohio St.3d 264, 2014-Ohio-542, ¶ 26. Here, Mr. Ott argues that the trial court abused its discretion by denying the motion for retrial because the trial court's journal entry of November 1, 2017, stated only that a mistrial had been declared, but gave

no reasoning. In his initial appellate brief, Mr. Ott asserts that "a court speaks through its journal[,]" but fails to provide authority or support for his contention that the absence of a discussion of the grounds for a mistrial in the November 1, 2017 journal entry should bar retrial. However, in his reply brief Mr. Ott references R.C. 2945.36 for the proposition that a trial court must journalize its reasons for declaring a mistrial.

{¶7} R.C. 2945.36 states four causes for which a trial court may discharge a jury without prejudice to the prosecution. The statute concludes: "[t]he reason for such discharge shall be entered on the journal." R.C. 2945.36. Here, the trial court did not indicate in its November 1, 2017 journal entry the reason for declaring a mistrial. Nonetheless, Mr. Ott has not demonstrated any prejudicial error in the trial court's conduct where the court indicated its reasoning on the record in open court but did not restate it in a subsequent entry upon the journal. *State v. Morgan*, 129 Ohio App.3d 838, 842 (8th Dist.1998). "While R.C. 2945.36 requires that the trial court enter on the journal its reasons for mistrial, it is sufficient if the record supports the trial court's reasons for doing so." *Id.* citing *Hines v. State*, 24 Ohio St. 134, 139 (1873); *see State v. Ross*, 9th Dist. Summit No. 20980, 2002-Ohio-7317, ¶ 20 ("[T]he mistrial decision should be evaluated on the record that was prepared at that time.").

{¶8} We conclude that any error in the trial court's failure to indicate the basis for the mistrial in the November 1, 2017 journal entry is harmless in light of the fact that the record does otherwise reflect the reasons for the mistrial. *State v. Frazier*, 1st Dist. Hamilton No. C-140369, 2015-Ohio-3116, ¶ 72. Consequently, we find Mr. Ott's initial argument to be without merit.

## Assignment of Error II

**The trial court abused its discretion when it denied Mr. Ott's motion to bar retrial because there was no manifest necessity for a mistrial, and mistrial would not further the interests of public justice.**

{¶9} Mr. Ott contends that the trial court erred by denying his motion to bar retrial on double jeopardy grounds. "The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution protect criminal defendants against multiple prosecutions for the same offense." *State v. Kareski*, 137 Ohio St.3d 92, 2013-Ohio-4008, ¶ 14. Where the trial court sua sponte declares a mistrial, double jeopardy will bar retrial if the judge's "declaration of a mistrial constituted an abuse of discretion." *State v. Glover*, 35 Ohio St.3d 18 (1988), syllabus.

{¶10} There is no question in this case that jeopardy attached when a jury was empaneled and the trial commenced on October 31, 2017. Whether the Double Jeopardy Clause bars a second trial following the sua sponte declaration of a mistrial "depends on whether (1) there [wa]s a 'manifest necessity' or a 'high degree' of necessity for ordering a mistrial, or (2) 'the ends of public justice would otherwise be defeated.'" *State v. Widner*, 68 Ohio St.2d 188, 189 (1981), citing *Arizona v. Washington*, 434 U.S. 497 (1978). The Supreme Court of the United States "has been reluctant to formulate precise, inflexible standards[,]" instead deferring "to the trial court's exercise of discretion in light of all the surrounding circumstances[.]" *Id.* at 190; *see also United States v. Jorn*, 400 U.S. 470, 480-81 (1971). "Although the judgment that [Mr. Ott] has appealed is the trial court's February [28, 2017] order [denying his motion to bar] retrial, the focus of this Court's review remains on the trial court's prior order declaring a mistrial." *State v. Ross*, 9th Dist. Summit No. 20980, 2002-Ohio-7317, ¶ 24.

{¶11} Here, the record reflects that the situation leading to the declaration of a mistrial arose from the actions of Mr. Ott and his son during the second day of trial. Detective Heath Studer, an officer with the Wadsworth Police Department and a witness for the State, informed the court that, while the judge was in chambers with counsel discussing an issue regarding one of

the witnesses, Mr. Ott was in the courtroom with his adult son complaining about two female jurors who he believed were goofing off and not paying attention. The son asked whether Mr. Ott had the names of the jurors. Mr. Ott handed his son a legal pad containing the jurors' information. After the son looked over the legal pad he told Mr. Ott that he was "going to go run her," in an apparent reference to a juror. The son then left the courtroom and took the legal pad with him.

{¶12} Det. Studer attested to these events under oath and in the presence of the trial judge, counsel, and Mr. Ott. Thereafter, the State conveyed to the court its extreme concern as to what the son might do with the jurors' information, especially in light of the State's knowledge of the son's criminal history. The State informed the trial court that the son had served time in prison for an October 2017 conviction for retaliation, had previously been convicted of domestic violence, and had been charged for intimidation on more than one occasion though he was never convicted[1]. The State expressed concern that the son, now in possession of the jurors' information, may be engaging in behavior intended to intimidate or harass persons who are involved in the case.

{¶13} When the trial judge then asked if anyone else wished to be heard on this "very serious matter[,]" Mr. Ott, in the presence of his counsel, told the judge that his son was "interested in [Mr. Ott] getting a fair trial." The trial judge admonished Mr. Ott, informing him that any issue he had with jurors needed to be brought to the attention of the court, not to his son, and that it is a "huge problem" that Mr. Ott handed the list of the jurors names over to his son who intends to "run those jurors." In response, Mr. Ott suggested that his son not be permitted to

---

[1] While Mr. Ott challenges on appeal the veracity of some of the State's claims about his son's record, he has not demonstrated—based on the record before this Court—the falsity of the State's claims.

come into the courtroom. The judge explained that such a remedy would be futile because the son already had the list of jurors.

{¶14} At this point, the trial court sua sponte declared a mistrial "on the basis of [Mr. Ott]'s actions in this case and the concern that the [court had] for these jurors." The judge stated that "[t]here's no other way this can be done[,]" and indicated that he would have the prosecutor's office investigate the matter. Det. Studer then provided some additional information regarding his personal fear for his family, as the State's witness in the case, based on his knowledge of the Ott family's dangerous reputation. Det. Studer also informed the court of the Ott family's connection through law enforcement that would enable the son to run the jurors' names and obtain information. The trial court declared that Mr. Ott is entitled to a fair trial, but that his own misconduct created an untenable situation with the jurors and circumstances under which they could not possibly be asked to deliberate. At no point did Mr. Ott challenge or deny that the events transpired as Det. Studer described them. Neither side objected to the declaration of a mistrial.

{¶15} Mr. Ott obtained new counsel following the mistrial and prior to the commencement of a new trial. Mr. Ott then filed his motion to bar retrial. In its order denying the motion, the trial court recounted its basis for declaring the mistrial. The trial court noted that Mr. Ott was actively involved in creating the situation that lead to a mistrial when he provided his son with the jurors' information and the opportunity confront those jurors. The trial court found that "the only way to adequately protect the jurors' safety was to declare a mistrial" thereby rendering any of the jurors' information useless to Mr. Ott and his son. The trial court further found that there existed a "high degree of necessity" for declaring the mistrial, and that

allowing Mr. Ott's "own intentional misconduct as a basis for barring a future retrial would defeat the ends of public justice."

**{¶16}** In his brief on appeal, Mr. Ott contends that there existed no manifest necessity to declare a mistrial and argues that the trial court failed to seriously consider any alternatives to declaring a mistrial. Mr. Ott argues that manifest necessity does not exist absent prejudice from contact with the jurors. In support of this argument, Mr. Ott cites to a case where a defendant appealed the trial court's denial of the *defendant's* motion to declare a mistrial after members of the defendant's own family greeted two jurors. *State v. Bronaugh*, 1st Dist. Hamilton Nos. C-950369 and C-950338, 1996 WL 194253, *1. In *Bronaugh*, the trial court determined that no prejudice resulted from the defendant's family members' brief communication with the jurors. *Id*. Quite unlike the situation in *Bronaugh*, in the present matter the trial court was promptly made aware that Mr. Ott, as a defendant in a pending criminal action, conspired with his son to disclose juror information in order to facilitate the son in "getting a fair trial" for Mr. Ott. Based on these circumstances, the trial court deemed it necessary to forestall any interference with or intimidation of the jurors by dismissing the jury and rendering useless the juror information in the son's possession. Mr. Ott has failed to support his argument that the situation, which *he created* and which posed a risk to the safety and integrity of the jurors, does not qualify as a manifest necessity to declare a mistrial. We conclude, based on our review of the record, that the trial court did not abuse its discretion in declaring a mistrial under these circumstances.

**{¶17}** Mr. Ott next argues that the trial court erred when it failed to seriously consider any alternatives to a mistrial. Although "a trial court abuses its discretion by declaring a mistrial without considering *any* alternatives" the trial court is not required to "rule out all possible alternatives before declaring a mistrial." *Ross*, 2002-Ohio-7317 at ¶ 28, citing *Jorn*, 400 U.S. at

486 and *Arizona*, 434 U.S. at 511. Rather, "the trial judge should allow the defense and prosecution to state their positions on the issue, consider their competing interests, and explore some reasonable alternatives before declaring a mistrial." *Id.* at ¶ 29, citing *Arizona* at 514-16. The only suggestion posed by Mr. Ott was that his son be banned from the courtroom. The trial judge explained that would not be a viable alternative because "[t]he bell has rung" and the son was already in possession of the names of the jurors, so barring him from the courtroom would not serve to remedy the situation Mr. Ott had created. Based on our review of the record, we conclude the trial court did not abuse its discretion by ruling out Mr. Ott's suggestion and declaring a mistrial after finding that "[t]here's no other way this can be done."

{¶18} Mr. Ott's second assignment of error is overruled.

### III.

{¶19} Mr. Ott's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

TEODOSIO, P. J.
CARR, J.
CONCUR.

APPEARANCES:

J. REID YODER, Attorney at Law, for Appellant.

JAMES RICE, Assistant Prosecuting Attorney, for Appellee.