[Cite as *State v. Smith*, 2024-Ohio-2358.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                   :

                                       Nos.  112882, 112908,
v.                                               :                 and 112910

BRITTANY SMITH,  ET AL.,                         :

    Defendants-Appellants.                :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  June 20, 2024

---

Criminal Appeals from the Cuyahoga County Common Pleas Court
Case Nos. CR-22-670878-C, CR-22-670878-D,  and CR-22-670878-E

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and  Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran, *for appellant* Brittany Smith.

Flowers & Grube and Louis E. Grube, *for appellant* Hakeem-Ali Shomo.

Robert A. Dixon, *for appellant* Anthony Bryant.

Baker & Hostetler, LLP, Terry M. Brennan, and Mary Pat Brogan, *for intervenor-appellee* The Honorable John J. Russo.

Taft, Stettinius & Hollister, LLP, John R. Mitchell, and Mira Aftim, *for intervenor-appellee* Kathleen Dunham.

ANITA LASTER MAYS, J.:

{¶1} In this consolidated appeal, defendants-appellants Brittany Smith ("Smith"), Hakeem-Ali Shomo ("Shomo"), and Anthony Bryant ("Bryant"), collectively referred to the appellants, appeal the trial court's decision denying their motion to dismiss on double jeopardy grounds and granting the plaintiff-appellee's, the State of Ohio ("the State"), motion to quash. We affirm the trial court's decision.

## I. Facts and Procedural History

{¶2} On May 2, 2022, the appellants and three other defendants were indicted by the Cuyahoga County Grand Jury on aggravated murder, murder, felonious assault, kidnapping, conspiracy to commit kidnapping, and having weapons while under disability, related to the murder of Alishah Pointer ("Pointer") and the kidnapping of two other women. As part of a plea agreement, the other three defendants pled guilty and agreed to truthfully testify against the appellants.

{¶3} The case was assigned to Judge John J. Russo ("Judge Russo"), and the trial date was set for March 6, 2023. Prior to trial, the appellants' trial counsel raised the issue of the State calling the other three codefendants to testify without

having first presented independent proof of the conspiracy and each appellant's involvement with the crime. In accordance with the trial court's stated procedure, the State made an oral record of an extensive proffer of the evidence it intended to produce at trial that would satisfy the requirement of independent proof of the conspiracy and each appellant's involvement.

{¶4} The State indicated that the crimes were committed against three women, Turquoise Jackson ("Jackson"), Tashara Harris ("Harris"), and Pointer stemming from the unsolved murder of Aminjas Shomo ("Aminjas"). The six defendants decided to conduct their own investigation into Aminjas's murder, and from social media and information obtained from other sources, determined that Collin Funches ("Funches") was involved in Aminjas's murder. The six defendants also identified Pointer as Funches's girlfriend. The defendants decided to look for Funches but were unable to locate him. Then they decided to kidnap Pointer to gain information on Funches's whereabouts.

{¶5} The defendants kidnapped Jackson and Harris at gunpoint, who informed them of Pointer's location. They kidnapped Pointer at gunpoint, took a photo of Pointer with a gun in her mouth, and posted it on Instagram to lure Funches out of hiding. According to the State, these events took place at one of the defendant's homes. While there, Smith used a roll of clear tape to wrap Pointer's face. The piece of tape was recovered from the home with Smith's fingerprint on it. Pointer was transported to another location and shot 16 times with two different

guns. Spent casings recovered from the scene of Pointer's murder had Bryant's DNA on them. The State offered additional evidence to demonstrate that the six defendants conspired together to commit the indicted crimes.

**{¶6}** After the State's proffer of evidence, trial began as scheduled, jury selection occurred, the jury was sworn, and six witnesses testified. On March 9, 2023, Judge Russo's bailiff privately approached the prosecutor during an afternoon break from trial. The bailiff asked the prosecutor whether the State was planning on calling any witnesses to establish independent proof of the conspiracy prior to the codefendants testifying. The prosecutor stated that he was unsure and then told his supervisor, who became visibly upset and told the prosecutor to ignore the request and that "we don't engage in that bull. . . ." Tr. 34.[1] On March 10, 2023, the next morning before trial, the bailiff approached the prosecutor again at the trial table and asked if there was a follow-up from the communication that happened on the previous day. Tr. 14.[2] The prosecutor did not respond to the bailiff. That same day, after leaving court, the three prosecutors on the case received a text message from Judge Russo's bailiff at 6:10 p.m. The text stated: "Sorry to bother you, but judge wanted me to text you and see if any of the

---

[1] This case has several transcripts totaling 1,320 pages. These facts are from Volume I with pages 1 through 1,153. Volume II has pages 1 through 167.

[2] These facts are from Volume II.

witnesses prior to Williams will tie in Smith to the conspiracy. He wants to make a good record. Thanks."

{¶7} One of the prosecutors responded to the text a minute later, stating: "We can't answer that over text. If he wants anything from us he needs to ask us in court with the other lawyers there. That's all we can say without them on this text." The bailiff responded, "ok."

{¶8} That same evening the prosecutor sent an email to each trial counsel for the appellants, including a screenshot copy of the text message from the bailiff. The email read as follows:

> RE: Information
>
> I wanted to let you all know that Ben, Sean, and I received a text from Judge Russo's bailiff tonight asking about the case. We were the only four in this text. Because you were not on this, we are sending it to all of you. Additionally, prior to sending this text, the bailiff has asked Sean a couple of times whether there will be more evidence of the conspiracy prior to Portia Williams testifies. Sean never answered those questions and told me about them after they happened. See the attached screenshot for the text and my response to it. The texts prior to that one were all ministerial in nature.

{¶9} On March 13, 2023, the appellants moved for a mistrial based on the ex parte communication. Judge Russo granted a hearing on the motion and stated that the communication sent by his bailiff to the prosecutors was meant to go to all the parties. Judge Russo indicated that he was devastated by the situation and stated that he felt terrible. He granted the request for a mistrial and recused himself from the case.

{¶10} On March 27, 2023, the appellants filed motions to dismiss and moved to subpoena Judge Russo and his bailiff. In their motions, the appellants argued that the trial court engaged in deliberate ex parte communication to ensure that the State would be able to meet the elements of its case. On May 1, 2023, Judge Russo and his bailiff filed a joint motion to quash the subpoenas, arguing that their appearances at the hearing were unnecessary because the appellants received the relief they sought, the material facts surrounding the text message were not in dispute, the appellants cannot meet the standard to subpoena a sitting judge, the bailiff's testimony is unnecessary, and the testimony sought is forbidden because a court speaks through its journal entries. That same day, another trial court judge held a hearing on the motions to dismiss with prejudice for violation of the Double Jeopardy Clause of the United States Constitution.

{¶11} At the hearing, the prosecutor testified as to both the in-person conversation and the text messages between he and Judge Russo's bailiff. On May 2, 2023, the trial court granted Judge Russo and his bailiff's motion to quash. On May 31, 2023, the trial court denied the appellants' motions to dismiss with prejudice on grounds of double jeopardy. The appellants filed this timely appeal assigning two errors for our review:

1. The trial court erred in denying the appellants' motion to dismiss on double jeopardy grounds; and

2. The lower court erred in granting the motion to quash the subpoenas of Judge Russo and his bailiff.

## II. Motion to Dismiss for Violation of Double Jeopardy

### A. Standard of Review

{¶12} "The denial of a motion to dismiss on double jeopardy grounds is a final appealable order subject to immediate appellate review." *Cleveland v. Jones*, 2017-Ohio-7320, ¶ 11 (8th Dist.), citing *State v. Anderson*, 2014-Ohio-542, ¶ 26. "Appellate courts review the denial of a motion to dismiss on the grounds of double jeopardy de novo." *Id.*, citing *State v. Morris*, 2012-Ohio-2407, ¶ 16.

### B. Law and Analysis

{¶13} In the appellants' first assignment of error, they argue that the trial court erred in denying their motions to dismiss on double jeopardy grounds. "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from multiple prosecutions for the same offense." *State v. Truhlar*, 2016-Ohio-5338, ¶ 33 (8th Dist.), citing *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982).

{¶14} However, the Double Jeopardy Clause does not bar a defendant from reprosecution in every case. When a defendant requests a mistrial, double jeopardy does not prohibit a retrial unless the defendant's request was precipitated by prosecutorial misconduct intended to elicit the defendant to seek a mistrial. *Id.* at ¶ 34, citing *N. Olmsted v. Himes*, 2004-Ohio-4241, ¶ 36-37.

**{¶15}** "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz*, 424 U.S. 600, 611 (1976). "It bars retrials where 'bad-faith conduct by judge or prosecutor,' threatens the '[harassment] of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *Id.*, quoting *Downum v. United States*, 372 U.S. 736 (1963).

**{¶16}** In the instant case, both the appellants and State agree there was not any prosecutorial misconduct. Instead, the trial court engaged in ex parte conversations with the State, and the State properly reported the communications to the defense. The trial court declared a mistrial, but the appellants have not demonstrated that the judicial misconduct was intended to elicit the defendants to seek a mistrial. In fact, the record supports that the trial court wanted to know if the State was planning on calling any witnesses to establish independent proof of the conspiracy prior to the codefendants testifying. This was demonstrated from both the oral conversation initiated by Judge Russo's bailiff on his behalf and from the text message.

**{¶17}** Additionally, the appellants have failed to demonstrate that judicial misconduct afforded the prosecution a more favorable opportunity to convict them. The State's proffered testimony concerning the evidence that would satisfy

the requirement of independent proof of the conspiracy and each appellant's involvement was not affected. "In other words, only conduct 'intentionally calculated to cause or invite mistrial' will bar retrial." *Himes,* 2004-Ohio-4241, at ¶ 38, citing *United States v. Thomas,* 728 F.2d 313, 318 (6th Cir. 1984).

**{¶18}** Therefore, the appellants' first assignment of error is overruled.

## III. Motion to Quash Subpoenas

### A. Standard of Review

**{¶19}** "We generally review a trial court's ruling on discovery matters, including motions to quash subpoenas, for abuse of discretion." *Gangale v. Coyne*, 2022-Ohio-196, ¶ 24 (8th Dist.). "Abuse of discretion is 'a very high standard.'" *Id*., citing *Supportive Solutions Training Academy, L.L.C., v. Elec. Classroom of Tomorrow*, 2013-Ohio-3910, ¶ 11 (8th Dist.).

**{¶20}** A trial court abuses its discretion where its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 481, (1983). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

### B. Law and Analysis

{¶21} In the appellants' second assignment of error, they argue that the trial court erred by granting Judge Russo and his bailiff's motion to quash the subpoena. The trial court stated in its journal entry:

> Defendants' joint motion to quash subpoenas is granted. The joint motion of subpoenaed witnesses Russo and [bailiff] to quash the subpoenas against them is hereby granted. From the motion, brief, and hearing of 5/1/23, the court concludes the purpose of the requested testimony is not to obtain unknown and necessary facts pertinent to the motions to dismiss but rather to delve into the purpose and intent of the witnesses in their courtroom conduct. The underlying facts involved in the motions to dismiss are not disputed or unknown; the motivations of the subpoenaed actors are not relevant to the issues raised by the motions.

Journal Entry No. 145735024 (May 2, 2023).

{¶22} The appellants argue that if Judge Russo and his bailiff testified at the hearing, the trial court would have a full record to evaluate whether the motion to dismiss on double jeopardy grounds was rightfully granted or denied. As previously stated in this opinion, the trial court did not err in denying the appellants' motion to dismiss. It was unnecessary to have Judge Russo and his bailiff testify at the hearing because the record is clear as to why Judge Russo improperly communicated with the State.

{¶23} Therefore, the appellants' second assignment of error is overruled.

{¶24} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
LISA B. FORBES, J., CONCURS (WITH SEPARATE OPINION)


LISA B. FORBES, J., CONCURRING:

**{¶25}** I agree with the majority that the trial court did not err by denying the motion to quash and motion to dismiss. I write separately to add that in analyzing whether there has been bad-faith conduct by a judge or prosecutor, appellate courts must look to objective evidence in the record. The United States Supreme Court recognized that "[i]nferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our criminal justice system." *Oregon v. Kennedy*, 456 U.S. 667, 675 (1982). As noted in the concurring opinion, "[b]ecause 'subjective' intent often may be unknowable, I emphasize that a court — in considering a double jeopardy motion — should rely primarily upon the objective facts and circumstances of the particular case." *Id*. at 679-680 (Powell, J., concurring).