[Cite as *Cleveland v. Lombardo*, 2025-Ohio-551.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,          :

                       No. 114018

    v.                                :

NICHOLAS LOMBARDO,               :

    Defendant-Appellant.        :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 20, 2025

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2023-TRC-013004

---

*Appearances:*

Mark Griffin, Cleveland Law Director, Aqueelah A. Jordan, Chief Prosecuting Attorney, and Nicholas Kolar, Assistant City Prosecutor, *for appellee.*

Patituce & Associates, LLC, and Catherine Meehan, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant Nicholas Lombardo ("Lombardo") appeals the judgment of the Cleveland Municipal Court denying his motion to dismiss the case against him

on double-jeopardy grounds.  After a careful review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} Lombardo was charged by the City of Cleveland ("City") with operating a vehicle while impaired ("OVI") under R.C. 4511.19(A)(1)(a) and speeding.  The underlying substantive facts are not relevant to the issues in this appeal.

{¶ 3} Prior to the commencement of a jury trial, the prosecutor informed the court and the defense that he would not be introducing evidence that Lombardo told the officer who pulled him over that he had two prior convictions for physical control:

> [COUNSEL FOR THE CITY]: No. Judge, in the case, um, there are times that I have clipped out, um — I just want to put this on the record — where the defendant is asked if he has any prior DUI's.  The defendant then says that he has two prior physical controls, he has no prior DUI's.  That has been clipped from the, uh, video, so the jury won't hear anything about that —.
>
> THE COURT: Okay.
>
> [COUNSEL FOR THE CITY]: — from when the trooper asks the question.
>
> THE COURT: Okay.
>
> [COUNSEL FOR THE CITY]: And then they also radio the, uh, dispatch to purposes of towing the vehicle, um, because it's on the side of the road and the other passenger can't drive home.  So that evidence has also been clipped, the evidence of the confirmation from dispatch that he has two, uh, prior physical's —.
>
> THE COURT: Oh, okay.  Got you.  So all references to any priors are deleted?

Okay.

[COUNSEL FOR THE CITY]: — any priors deleted from when the trooper is inquiring.

THE COURT: Okay.

(Tr. vol. IV, 6-8.)

{¶ 4} Trial commenced. Following voir dire, a jury was seated, and the City began its case by presenting the testimony of the arresting officer, Sgt. Christopher Brock ("Sgt. Brock"). During Sgt. Brock's testimony, the City played video clips of his dash and body cameras, depicting Lombardo's driving, Sgt. Brock's interaction with Lombardo after pulling him over, and the administration of field-sobriety tests. The prosecutor stopped and started the videos at various times to question Sgt. Brock. After asking Sgt. Brock why he conducted field-sobriety tests, the prosecutor then played another portion of a video. During this part, Sgt. Brock can be heard asking Lombardo if he had any prior OVIs. Lombardo responded that he had had "two physical controls."

{¶ 5} Defense counsel requested a sidebar, and the video was stopped. Counsel for the City and defense counsel agreed that the proper remedy was to declare a mistrial. The trial court assented and informed the jury, stating:

> [THE COURT]: All right. As much as it — it pains me to tell you guys — you're probably like what are they talking about. There was an agreement at the beginning of the trial that certain things would not, uh, surface during the trial. You probably don't even know. I don't know if you're aware of it or not, but I don't want to take the chance.
>
> Um, and so both sides agreed that the best course of action is to declare this a mistrial. So what does that mean to you? That means that you

guys are excused from hearing this trial. We are concluding, and, uh, we're gonna start from scratch. That's what a mistrial is.

So, um, we appreciate you all being here all this time. At least you got a taste of what it's like to be on a Municipal Court jury and all that. Um, so we are going to excuse you. Uh, I know you were looking forward to deliberating, but just so I know, did you all hear anything on the video that made you scratch your head?

Oh you did? What was it?

THE JUROR: He asked if he was ever found [to] like have DUI before, and he like started to say something almost like yeah.

THE JUROR: I heard that, too.

THE JUROR: Physical control.

[COUNSEL FOR THE CITY]: At least they're paying attention.

THE COURT: They were. They were. And it wasn't about —.

THE WITNESS: And I didn't do anything wrong by asking him that. I didn't do anything wrong by asking him that.

THE COURT: We thought the video was scrubbed of —.

THE WITNESS: I heard it, too. And I thought it was scrubbed, too. So I understand.

THE COURT: I mean, it happens. You know, worse things can happen. And, uh, we should not underestimate you. Everybody does not know what physical control is. They do not know that it is an alcohol-related offense.

And so, you know, you hear physical control, it could be anything to a less astute jury than yourselves. But just in the abundance of caution, both the defense and the prosecution agree that it's not worth, um, that being at the back of your mind that could factor into your deliberations, and we do not want that to factor into your deliberations. So we're gonna declare it a mistrial. But again, thank you all for being here. I hope your experience was edifying and I'm sure we'll see you again some time. All right.

(Tr. vol. IV, 174-176.)

{¶ 6} The jury was excused. The court and the attorneys then discussed scheduling the next trial and set a mutually agreeable date.

{¶ 7} On the day the second trial was to begin, Lombardo filed a motion to dismiss, arguing that trying the case again violated his right against multiple prosecutions under the Double Jeopardy Clause. In his motion, he acknowledged that generally there are no double-jeopardy issues when a mistrial was declared but argued that an exception occurred here when the request for mistrial was prompted by prosecutorial misconduct. Lombardo asserted that the City was aware that there was material within the videos that would taint the jury by their admission and assured the court and defense that the videos had been "scrubbed" of any reference to Lombardo's prior arrests or convictions. Nonetheless, when one of the videos was played, there was a question about Lombardo's prior arrests and convictions. Lombardo contended in his motion that the court could "easily conclude" that the City's direct action provoked him into seeking a mistrial.

{¶ 8} Both sides appeared on the day of the scheduled retrial, and the court heard arguments on the motion to dismiss. Counsel for the City emphasized that playing the video was unintentional and that it would have made no sense for him to play the improper evidence since they were hours into the trial and felt it was going well. The prosecutor apologized and argued that double jeopardy could not apply because there was no intentional misconduct.

{¶ 9} The court stated that it did not believe that counsel for the City intentionally played the video to prejudice the jury. The trial court noted that it did not agree that a mistrial had been necessary and believed that a curative instruction would have remedied the issue. However, both the City and Lombardo had felt that a mistrial was necessary, so the court had granted the motion. The court ultimately found that there was only inadvertence and no prosecutorial misconduct; therefore, double jeopardy would not bar a retrial, and Lombardo's motion to dismiss was denied.

{¶ 10} Lombardo then appealed the denial of his motion to dismiss.

## II. Law and Analysis

{¶ 11} "The denial of a motion to dismiss on double jeopardy grounds is a final appealable order subject to immediate appellate review." *Cleveland v. Jones*, 2017-Ohio-7320, ¶ 11 (8th Dist.), citing *State v. Anderson*, 2014-Ohio-542, ¶ 26. "Appellate courts review the denial of a motion to dismiss on the grounds of double jeopardy de novo." *Id.*, citing *State v. Morris*, 2012-Ohio-2407, ¶ 16.

{¶ 12} "The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, protects a criminal defendant from multiple prosecutions for the same offense." *State v. Truhlar*, 2016-Ohio-5338, ¶ 33 (8th Dist.), citing *Oregon v. Kennedy*, 456 U.S. 667 (1982).

{¶ 13} However, the Double Jeopardy Clause does not bar a defendant from prosecution in every case. When a defendant requests a mistrial, double jeopardy

does not prohibit a retrial unless the defendant's request was precipitated by prosecutorial misconduct that was intended to elicit the defendant to seek a mistrial. *Truhlar,* ¶ 34, citing *N. Olmsted v. Himes*, 2004-Ohio-4241, ¶ 36-37 (8th Dist.).

{¶ 14} "The Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions." *United States v. Dinitz*, 424 U.S. 600 (1976). "It bars retrials where 'bad-faith conduct by judge or prosecutor,' threatens the '[harassment] of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant." *Id.*, quoting *Downum v. United States*, 372 U.S. 734, 736 (1963).

{¶ 15} Lombardo argues in his brief that the City was "aware of [its] conduct and was deliberate in [its] action" and "undoubtedly knew that there was material . . . that would taint the jury . . . but chose to play them anyway." But Lombardo does not point to anything in the record that would demonstrate any intent on the part of counsel for the City. Lombardo acknowledges that the City was "[c]onscious of the prejudice it would cause" and "spent a considerable amount of time ensuring that the material would be excised from the evidence" it was planning to use. Yet, Lombardo still surmises that the City deliberately played the improper evidence, arguing that it was "implausible" that the City was "wholly unaware" that the video contained the prohibited information. Lombardo provides no support for these contentions beyond his own conclusory assertions.

{¶ 16} "Generally, the narrow exception adopted by the United States Supreme Court in *Kennedy* is reserved for the limited set of circumstances where the nature of the state's misconduct clearly and unquestionably demonstrates its intent to cause or invite a mistrial." *State v. Kelly*, 2015-Ohio-1948, ¶ 19 (8th Dist.). A reviewing court may consider the following factors in determining whether the required intent to provoke a mistrial existed: (1) whether there was a sequence of overreaching prior to the single prejudicial incident; (2) whether the prosecutor resisted or was surprised by the defendant's motion for a mistrial; and (3) findings of the trial court concerning the intent of the prosecutor. *State v. Patterson*, 2015-Ohio-873, ¶ 75 (8th Dist.). The trial court's finding regarding whether the prosecuting attorney intended to cause a mistrial is a finding of fact which is accorded great deference. *Kennedy*, 456 U.S. at 675.

{¶ 17} Lombardo argues that all three of the above prongs were met in this case: (1) the City engaged in overreaching when Sgt. Brock's testimony frequently contradicted the video; (2) the City was not surprised by the request for the mistrial and even agreed that it was appropriate; and (3) the trial court did not make any journalized findings regarding the intent of the prosecutor. We disagree.

{¶ 18} First, we cannot find that the City engaged in "a sequence of overreaching" simply because some of Sgt. Brock's testimony about the stop and arrest of Lombardo conflicted with the video of the encounter.

{¶ 19} Secondly, it is unsurprising that the prosecutor agreed that the mistrial was appropriate. Lombardo had not filed a motion in limine or otherwise

sought to exclude his statements in the video regarding his prior convictions. Rather, prior to the commencement of trial, it was the City who informed the court and defense that it had "clipped" the inadmissible statements from the video that it was going to be offering.

{¶ 20} Finally, it is true that the trial court did not articulate any findings regarding the prosecutor's intent in its journal entry denying the motion to dismiss. However, Lombardo did not request written findings of fact, nor does he cite any authority where the court was required to provide any in ruling on the motion to dismiss.

{¶ 21} We are still able to discern the trial court's findings by reviewing the court's statements on the record regarding the granting of the mistrial and denying the motion to dismiss. The court noted that, on the video, Lombardo stated that he had two "physical controls"; the court doubted that the average layperson would know what a "physical control" citation meant. The court stated that it did not believe the circumstances rose to the level of a mistrial and stated that it believed a curative instruction would have sufficed. Regardless, the court found that there was nothing that would lead it to think that the City had intentionally played the clip to prejudice the jury. It ultimately held that what had occurred was the result of inadvertence and was not "even close to prosecutor[ial] misconduct."

{¶ 22} We are unable to conclude that the prosecutor's playing of the video showing Lombardo's statement about prior convictions was the result of a strategic ploy to induce a mistrial. As determined by the trial court, the actions by the

prosecutor appear to be the result of inadvertence and not intent. "Mere negligence will not suffice to show intent to provoke a mistrial." *State v. Betts*, 2007-Ohio-5533, ¶ 26 (8th Dist.), citing *State v. Girts*, 121 Ohio App.3d 539, 553 (8th Dist. 1997). This is not the rare case where the protections of the Double Jeopardy Clause require the dismissal of Lombardo's indictment with prejudice.

{¶ 23} The trial court did not err in denying Lombardo's motion to dismiss on double-jeopardy grounds, and his sole assignment of error is overruled.

{¶ 24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
WILLIAM A. KLATT, J.,* CONCUR

(*Sitting by assignment: William A. Klatt, J., retired, of the Tenth District Court of Appeals.)