[Cite as *State v. Upton*, 2025-Ohio-1660.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114276 |
| v. | : | |
| ABREA UPTON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 8, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-684505-A

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Tasha L. Forchione and Benjamin Fuchs,
Assistant Prosecuting Attorneys, *for appellee.*

Kimberly Kendall Corral and Gabrielle M. Ploplis, *for
appellant.*

WILLIAM A. KLATT, J.:

{¶ 1} Defendant-appellant Abrea Upton ("Upton"), appeals the trial court's

denial, in part, of her motion to dismiss the indictment and argues retrial on Counts

1 and 6 of the indictment is barred under the double-jeopardy doctrine. For the following reasons, we affirm the lower court's findings.

**Factual and Procedural History**

{¶ 2} On March 16, 2023, in Cuyahoga C.P. No. CR-23-679524-A ("case 679524"), Upton was indicted for an incident that allegedly occurred on or about March 8, 2023, with Shantaoionna Hughes. The indictment included these six charges: Count 1, felonious assault in violation of R.C. 2903.11(A)(2); Count 2, felonious assault in violation of R.C. 2903.11(A)(1); Count 3, aggravated robbery in violation of R.C. 2911.01(A)(1); Count 4, robbery in violation of R.C. 2911.02(A)(2); Count 5, grand theft in violation of R.C. 2913.02(A)(1); and Count 6, contributing to unruliness or delinquency of a child in violation of R.C. 2919.24(B)(1). Counts 1 through 5 included one- and three-year firearm specifications. Upton pleaded not guilty to the indictment on April 5, 2023, and on August 28, 2023, the State dismissed the case without prejudice.

{¶ 3} On August 31, 2023, in Cuyahoga C.P. No. CR-23-684505-A, Upton was reindicted on the same six offenses previously charged in case 679524 plus Count 7, criminal damaging or endangering in violation of R.C. 2909.06(A)(1). The reindictment also charged codefendant Dominique Harris with all seven counts. Upton pleaded not guilty to the indictment on October 23, 2023, and on January 18, 2024, Upton filed a notice of intent to argue self-defense. On February 19, 2024, and February 21, 2024, respectively, Upton filed a motion to sever the two

defendants and an amended motion to sever. The trial court granted the amended motion to sever.

{¶ 4} On February 26, 2024, the case proceeded to a jury trial. Defense counsel made a Crim.R. 29 motion for acquittal at the close of the State's case and a renewed Crim.R. 29 motion at the close of the defense's case; the trial court denied both motions. Outside of the jury's presence, defense counsel made an oral motion to modify the verdict forms. Specifically, defense counsel asked that the verdict forms include a statement as to whether the jury found the defendant acted in self-defense. The trial court denied defense counsel's motion but agreed to poll the jurors on the issue of self-defense if they returned a verdict unfavorable to Upton.

{¶ 5} Following deliberations, the jury found Upton guilty of Count 1, felonious assault with one- and three-year firearm specifications, and Count 6, contributing to unruliness or delinquency of a child; the jury found Upton not guilty of Counts 3, 4, 5, and 7. The State had dismissed Count 2 prior to trial.

{¶ 6} After the reading of the verdict, the trial court polled each juror on two questions: (1) is this your verdict? and (2) is it your finding that the State proved beyond a reasonable doubt that Upton did not act in self-defense? Each juror answered the questions affirmatively except for juror No. 7.

The Court: Juror Number 7?

Juror No. 7: Can you repeat the question?

The Court: Question one: Is this your verdict? Question number two: is it your finding that the State proved beyond a reasonable doubt that the defendant did not act in self-defense?

Juror No. 7:  Can you skip me?

The Court:  Sure.  Juror Number 8?

Juror No. 8:  Yes.

The Court:  Juror Number 9?

Juror No. 9:  Yes.

The Court:  Juror Number 10?

Juror No. 10:  Yes.

The Court:  Juror Number 11?

Juror No. 11:  Yes.

The Court:  Juror Number 12?

Juror No. 12:  Yes.

The Court:  Okay.  Do you wish to answer, or you just don't wish to answer?

Juror No. 7:  What if I don't answer?

The Court:  It will be part of the record either way.

Juror No. 7:  What would that mean?  What's gonna happen if I don't answer?

The Court:  I mean, nothing.  It's just part of the record that you didn't answer.

Juror No. 7:  I don't want to answer.

The Court:  Okay.  Very good.  Okay.  Members of the jury, thank you so much.

Tr. 1199-1201.

**{¶ 7}** A sidebar was then held at which defense counsel requested that the court require juror No. 7 to answer the polling questions to ensure a unanimous verdict.[1] The trial court declined to comply with defense counsel's request.

**{¶ 8}** The trial court discharged the jury, and defense counsel immediately moved for a mistrial on the basis that the jury polling did not support a unanimous verdict. The trial court denied the motion for mistrial finding the signatures of all 12 jurors on the verdict forms indicated a unanimous verdict.

**{¶ 9}** Following the discharge of the jury, the trial judge entered the jury room to thank the jurors for their service and answer any of their questions. The trial judge then returned to the bench and made the following statements to the attorneys and Upton; the jury was not present since they had been discharged:

> The Court: Good afternoon. We are back on the record. So the Court did deny Defense's motion for a mistrial on the record prior to releasing the jury. What I'm going to ask the parties do at this time, I am going to ask you to brief it for the Court. Although the oral motion was denied, it is something that I am leaving open to reconsideration, pending the case law, pending briefs.
>
> And for purposes of today, the Court has made the determination that, based on the fact that the Court did have rather extensive conversation with jury in the courtroom [after] announcing the verdict, albeit the Court, a majority of the time, was just listening — there was no suggestion of any sort made to the jury, particularly [j]uror Number 7, with respect to deliberations and her verdict — the Court does not feel that it would be appropriate at this time to repoll the jury or to repoll Number 7, period, because there have been discussions with the jury by the Court.
>
> . . .

---

[1] The sidebar discussion was not transcribed by the court reporter. During the March 7, 2024 hearing, the parties and trial court judge stated on the record their recollection of the conversation.

The jury was brought in. The verdict was read in open court. Juror Number 7 declined in the polling. And after the Court released the jury, the Court did go into the jury room, as we often do, to thank the jury, you know, sort of hear what the impressions of the case were.

But particularly because of the situation and particularly because the codefendant's case remains on the Court's docket, I didn't express any opinions whatsoever as to my views on the case.

Tr. 1203-1205. The State indicated it was their position that juror No. 7 should be repolled, even after the jury had been discharged, and the trial court overruled the State's request.

{¶ 10} On the same date the jury's verdict was read and the jury was polled — March 6, 2024 — the trial court issued a journal entry that detailed the jury's verdict and included the following language:

The court announced the verdict in open court and while polling the jury, juror [N]umber 7 declined to answer the polling questions. The jury was discharged at that time. Defense counsel made an oral motion for a mistrial. The motion was denied, however the court may reconsider its ruling after the parties have an opportunity to provide the court with the relevant case law and briefing to support their respective positions.

{¶ 11} On March 7, 2024, the day after the verdict, the trial court conducted a hearing at which it released Upton from county jail and placed her under GPS supervision. The trial court also went on the record to identify statements that were made by juror No. 7 to court staff — the court's bailiff and courtroom assistant — during the course of deliberations but were first relayed to the trial judge on the morning of the hearing. Specifically, juror No. 7 asked about the longest time period a jury has deliberated and if the court ever conducted a trial that resulted in a

mistrial. The trial judge also stated on the record her experience in the jury room after she discharged the jury. The trial judge further stated that she observed juror No. 7 crying; juror No. 7 being consoled by her fellow jurors; and juror No. 7 stating, "[W]hat if the defendant were my daughter." Tr. 1215. The trial judge heard members of the jury remind juror No. 7 how they had determined Upton's actions did not constitute self-defense and those conclusions led to a guilty verdict on the felonious assault charge. The trial judge further stated she observed juror No. 7 retrieve the jury's laptop and view the surveillance video, and juror No. 7 then indicated she agreed with the other jurors on the verdict. The trial judge stated she did not interpret the jurors' actions as exerting pressure on juror No. 7.

{¶ 12} On March 13, 2024, Upton filed a "memorandum of law as to unanimous polling" seeking a dismissal pursuant to Crim.R. 48, and the State filed a brief in opposition on March 20, 2024. On March 21, 2024, the trial court issued a journal entry that stated, "[F]or good cause shown, this matter is hereby reassigned and transferred to the docket of Judge Brian Mooney for further proceedings according to law." On that same date, Upton filed a motion for acquittal per Crim.R. 29(C), and one day later Upton filed an objection to substitution of the trial judge to preserve her right to challenge that issue. On March 27, 2024, Upton filed (1) a motion to correct the State's misstatement of law and facts as presented in its March 20, 2024 brief in opposition and (2) a motion to join the State's proposal that dismissal pursuant to Crim.R. 48(B) is an appropriate remedy. The State subsequently filed a brief in opposition to Upton's motion for acquittal and filed a

motion to strike Upton's motion to join the State's proposal for dismissal. On April 9, 2024, Upton filed a motion seeking clarification as to why the case was reassigned to a new trial court judge.

{¶ 13} On June 11, 2024, the court issued the following journal entry: "Court orders a new trial be set due to lack of unanimous verdict in original trial." In response, Upton filed a motion to dismiss pursuant to double jeopardy on July 15, 2024. On August 19, 2024, the trial court granted, in part, Upton's motion to dismiss finding double jeopardy applied to Counts 3, 4, 5, and 7, the counts on which she was acquitted. The trial court denied the motion on Counts 1 and 6, of which Upton was found guilty, because the verdict for those counts was not unanimous:

> Defendant's motion to dismiss for double jeopardy is granted in part.
>
> The court agrees that double jeopardy applies to [C]ounts 3, 4, 5, and 7 of the indictment. The jury returned not guilty verdicts as to those counts and it was journalized. The polling of the jury conducted was only applicable to [C]ount 1 of the indictment, as the polling referenced self-defense.
>
> Since one juror refused to answer the polling questions, a new trial is ordered for [C]ounts one and six, where defendant was found guilty in the original journal entry. Count two was dismissed by the state prior to trial, and is not part of the new trial, since the state has not re-indicted the case to include that count.

August 19, 2024 judgment entry.

{¶ 14} On August 20, 2024, Upton filed a timely notice of appeal presenting one assignment of error:

> The trial court erred in denying defense's motion to dismiss in part for application of double jeopardy.

The trial court had not sentenced Upton prior to the filing of her appeal.

**Legal Analysis**

{¶ 15} On appeal, Upton argues the trial court erred when it denied, in part, her motion to dismiss because double jeopardy bars a second trial on Counts 1 and 6. Specifically, she argues that once the trial court accepted the nonunanimous guilty verdicts, spoke with the jurors after discharge, issued the March 6, 2024 corresponding journal entry that stated the jury returned a guilty verdict on Counts 1 and 6, and received Upton's motion for dismissal pursuant to Crim.R. 48, structural error occurred and double-jeopardy protections attached barring retrial.

{¶ 16} The State counters that Upton did not raise double jeopardy regarding Counts 1 and 6 in her motion to dismiss and, therefore, that issue was not preserved for appeal. A thorough review of Upton's motion to dismiss for application of double jeopardy shows she sufficiently raised the issue of double jeopardy in regard to all counts of the indictment for us to address the issue on appeal. The State also argues that where the trial court granted a mistrial, at Upton's request, no final verdict was reached and double jeopardy does not apply. We agree with the State's second argument.

**A. Standard of Review**

{¶ 17} Appellate courts review the denial of a motion to dismiss an indictment on the grounds of double jeopardy under a de novo standard. *State v. Mutter*, 2017-Ohio-2928, ¶ 13.

**B. Double Jeopardy**

{¶ 18} The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Through the Fourteenth Amendment to the United States Constitution, this protection applies to individuals prosecuted by the State of Ohio. *State v. Brown*, 2008-Ohio-4569, ¶ 10, citing *Benton v. Maryland*, 395 U.S. 784, 786 (1969). The Ohio Constitution provides, "No person shall be twice put in jeopardy for the same offense." Ohio Const., art. I, § 10. The protections afforded by the Ohio and United States Constitutions' Double Jeopardy Clauses are coextensive. *State v. Martello*, 2002-Ohio-6661, ¶ 7, citing *State v. Gustafson*, 1996-Ohio-299, ¶ 35.

{¶ 19} The Double Jeopardy Clauses protect against three abuses: (1) "a second prosecution for the same offense after acquittal," (2) "a second prosecution for the same offense after conviction," and (3) "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). Here, we are concerned with the protection against a second prosecution after a conviction.

{¶ 20} The Double Jeopardy Clauses do not prevent reprosecution in every case, and the application of double jeopardy following a mistrial varies depending upon whether the defendant requested the mistrial. Where the defendant did not request the mistrial, double jeopardy does not bar a retrial if the State demonstrates a showing of manifest necessity for the mistrial or that the ends of public justice

would otherwise be defeated. *Cleveland v. Wade*, 2000 Ohio App. LEXIS 3629, *9 (8th Dist. Aug. 10, 2000). "[W]hen a defendant requests a mistrial, double jeopardy does not prohibit a retrial unless the defendant's request was precipitated by prosecutorial misconduct intended to elicit the defendant to seek a mistrial." *State v. Smith*, 2024-Ohio-2358, ¶ 14 (8th Dist.), citing *State v. Truhlar*, 2016-Ohio-5338, ¶ 34 (8th Dist.), citing *N. Olmsted v. Himes*, 2004-Ohio-4241, ¶ 36-37 (8th Dist.).

{¶ 21} As this court explained in *Himes*:

> Generally, there are no double jeopardy considerations when a mistrial is declared. *State v. Gaines*, 8th Dist. Cuyahoga No. 82301, 2003-Ohio-6855. If a defendant's motion for mistrial is granted, or the trial court sua sponte declares a mistrial, the state is usually not precluded from retrying a criminal defendant. *United States v. Tateo* (1964), 377 U.S. 463, 467, 12 L.Ed.2d 448, 84 S.Ct. 1587; *State v. Loza* (1994), 71 Ohio St.3d 61, 70, 1994-Ohio-409, 641 N.E.2d 1082.
>
> However, a narrow exception to this rule applies when the defendant's request or the judge's actions are prompted or instigated by prosecutorial misconduct designed to goad the defendant into seeking a mistrial. *Oregon v. Kennedy*, 456 U.S. at 676; *State v. Glover* (1988), 35 Ohio St.3d 18, 517 N.E.2d 900.
>
> "Prosecutorial misconduct, by itself, is not enough to trigger the exception to the Double Jeopardy Clause — the state must intend 'to subvert the protections afforded by the Double Jeopardy Clause.' *Kennedy*, supra, 456 U.S. at 675. In other words, only conduct 'intentionally calculated to cause or invite mistrial' will bar retrial. *United States v. Thomas* (C.A.6, 1984), 728 F.2d 313, 318." *State v. Girts* (1997), 121 Ohio App.3d 539, 551, 700 N.E.2d 395.

*Id.* at ¶ 36-38.

{¶ 22} The narrow exception discussed by the *Himes* Court is "'reserved for the limited set of circumstances where the nature of the State's misconduct clearly and unquestionably demonstrates its intent to cause or invite a mistrial.'" *Cleveland*

*v. Lombardo*, 2025-Ohio-551, ¶ 16 (8th Dist.), quoting *State v. Kelly*, 2015-Ohio-1948, ¶ 19 (8th Dist.). A reviewing court may consider three factors in determining whether the required intent to provoke a mistrial existed: (1) whether there was a sequence of overreaching prior to the single prejudicial incident; (2) whether the prosecutor resisted or was surprised by the defendant's motion for a mistrial; and (3) findings of the trial court concerning the intent of the prosecutor. *State v. Patterson*, 2015-Ohio-873, ¶ 75 (8th Dist.) ("*Patterson* factors").

{¶ 23} The record demonstrates that the trial court granted a mistrial at Upton's request although not until several months after the motion was first presented and after the trial court initially denied the motion. On March 6, 2024, following discharge of the jury, Upton orally moved for a mistrial arguing there was not a unanimous verdict, and the trial court denied the motion in open court. That same day, the trial court stated, on the record, that it was going to leave its decision on the motion for mistrial open for reconsideration pending briefing by the parties. Consistent with that pronouncement, the trial court's March 6, 2024 journal entry reflected the jury's verdict and stated, "[T]he court may reconsider its ruling [on Upton's motion for a mistrial] after the parties have an opportunity to provide the court with the relevant case law and briefing to support their respective positions." Upton filed a "memorandum of law as to unanimous polling" on March 13, 2024, and the State filed a brief in opposition on March 20, 2024. The March pleadings did not specifically address Upton's motion for a mistrial but included detailed discussion about whether the jury rendered a unanimous verdict that was the basis

for Upton's motion for mistrial. The trial court issued a judgment entry on June 11, 2024, that reads: "Court orders a new trial be set due to lack of unanimous verdict in original trial." The trial court's June 11, 2024 judgment entry — that ordered a new trial absent a unanimous verdict — granted Upton's motion for mistrial.

{¶ 24} We note that motions for reconsideration of a final judgment issued by a trial court are generally a nullity and cannot be reconsidered by the trial court. *Pitts v. Dept. of Transp.*, 67 Ohio St.2d 378, 379 (1981). However, "[w]here no final judgment has been entered, a trial court has continuing jurisdiction to revise its order at any time and can entertain a motion for reconsideration." *Phillips v. Mufleh*, 95 Ohio App.3d 289, 293 (6th Dist. 1994). The Ohio Supreme Court stated:

> Numerous cases hold that the verdict becomes final once the jury has been polled and each juror has assented to the verdict in open court. "A verdict is final if (1) the deliberations are over, (2) the result is announced in open court, and (3) the jury is polled and no dissent is registered." *United States v. White* (C.A.5, 1992), 972 F.2d 590, 595.

*State v. Williams*, 2003-Ohio-4396, ¶ 34. Additionally, a judgment of conviction is a final order when it sets forth the jury verdict, the sentence, and the judge's signature, and the judgment is entered on the journal by the clerk of court. *State v. Lester*, 2011-Ohio-5204, ¶ 8, quoting *State v. Baker*, 2008-Ohio-3330, syllabus; *see* Crim.R. 32(C).

{¶ 25} Here, there was no final order where Juror No. 7 refused to answer during the jury poll and the trial court never sentenced Upton. The trial court had continuing jurisdiction to reconsider the motion for mistrial and revise its order on

that motion. Thus, a retrial on Counts 1 and 6 would be barred by double jeopardy only if prosecutorial misconduct forced Upton to seek a mistrial.

{¶ 26} In her motion to dismiss, Upton argued irregularities in the jury deliberations occurred when (1) juror No. 7 communicated with court staff during deliberations, (2) the trial court discharged the jury following polling without juror No. 7 answering the questions posed, and (3) deliberations continued after discharge of the jury and in the trial court's presence. Upton made no arguments that prosecutorial misconduct resulted in the mistrial.

{¶ 27} Further, a review of the record and the context in which the mistrial was declared demonstrate no evidence of prosecutorial manipulation. In applying the *Patterson* factors, we conclude there was not a sequence of overreaching by the State prior to the reading of the nonunanimous verdict. The record does not indicate that the State was surprised by Upton's motion for a mistrial or that the trial court made any findings concerning the malicious intent of the assistant prosecuting attorney or prosecuting attorney. The record shows that Upton requested a mistrial because the verdict was not unanimous, and the trial court granted a mistrial on that basis. Upton's request for a mistrial cannot be seen as being prompted or instigated by prosecutorial misconduct intended to coax Upton into seeking a mistrial, and, therefore, double-jeopardy considerations do not attach.

{¶ 28} We also find Upton's arguments that the irregularities in the deliberation process implicated structural errors and those errors required application of the double-jeopardy doctrine are misguided. We do not dispute that

irregularities during the deliberation process resulted in a nonunanimous verdict that led to a mistrial. However, the type of error that necessitated a grant of mistrial is not at issue on appeal; the only issue is whether the trial court erred when it denied Upton's motion to dismiss Counts 1 and 6 pursuant to double jeopardy. Even if structural error were at issue, a finding that a trial error was structural does not dictate the application of double jeopardy and automatically prevent retrial of the case. *See State v. Montgomery*, 2022-Ohio-2211, ¶ 33 (A finding of structural error resulted in a reversal of the defendant's conviction and a remand to the trial court for a new trial.). Accordingly, whether a structural error occurred that resulted in the mistrial is moot.

{¶ 29} For the foregoing reasons, we overrule Upton's assignment of error.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
WILLIAM A. KLATT, JUDGE*

EILEEN T. GALLAGHER, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)